## PETERS v. ACTIVE MFG. CO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF OHIO.

No. 254. Submitted April 16, 1889. — Decided May 13, 1889.

Letters patent No. 281,553, granted to George M. Peters, July 17, 1883, for
an "improvement in dies for making dash-frames," are invalid, for want
of patentable invention.

IN EQUITY to restrain the infringement of letters patent.
Decree dismissing the bill. Plaintiff appealed. The case is
stated in the opinion.

Mr. W. Hubbell Fisher for appellant.

Mr. Arthur Stem for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the
United States for the Southern District of Ohio, by George M.
Peters against The Active Manufacturing Company, a corpora-
tion, founded on the alleged infringement of letters patent No.
281,553, granted to said Peters, July 17, 1883, on an applica-
tion filed December 7, 1880, for an "improvement in dies for
making dash-frames." A dash-frame is made of metal, and
is to be used in constructing a dash-board for a carriage or
other vehicle.

The defences set up in the answer are want of novelty, non-
infringement, and also that the devices described and claimed
in the patent were, before the alleged invention thereof by
Peters, old and well-known in forging, welding, and other
metal-working, and that it required no invention to apply or
adapt such devices to the old form and construction of dash-
frames. Issue was joined, proofs were taken, and the Circuit
Court, in its decree, found that the patent was "void for want

of invention," and dismissed the bill. We concur in that conclusion.

The specification of the patent says: "The principal object of my invention is to provide an efficient and useful method of welding the end bars of a metal dash-frame to the bottom rail, and a method by which the bottom rail of the dash is strengthened at the weld and at the portion of said rail to which the dash-foot is to be attached. Another object of my invention is to provide a means by which a recess is formed in the bottom rail, preparatory to punching said rail, to receive the bolt or other attachment which secures the dash-foot to the bottom rail, the operation of forming the recess being performed at the same time that the end-bar is welded to the bottom rail."

The entire operation set forth in the specification, of welding the bars to the rail, of strengthening the bottom rail of the dash, and of forming a recess in the bottom rail at the same time that the welding is done, is described in the specification as effected by one and the same simultaneous action of two opposing dies, an upper die and a lower die, placed face to face. The dies are provided with channels or depressions, one, $a$, to receive the end-bar of the frame, and the other, $a'$, to receive the bottom rail, the channels, $a$ $a'$, of one die coinciding with like channels in the other die, when the two dies are placed together. From the bottom of the depressions $a'$ in the two dies rise tongues, $a^2$, which, like the depressions $a$, coincide with each other when the two dies are placed together, the tongues preferably not rising quite to the face of the dies, so that, when the dies are placed together, a slight space is left between the two tongues. The specification also states that, preferably, the tongues $a^2$ are so formed that when the dies are placed together the tongues will approach closer to each other at that portion of themselves which forms that part of the web in the lower bar which is to be punched through to receive the bolt or other device by which the dash-frame is connected to the foot, or vehicle, than at any other point; in other words, the face of the tongues is inclined. The object of such a formation of the tongues is stated in the speci-

fication to be, to make the web left in the bottom rail thinner
in that portion of such rail where perforations are to be made
to receive the bolts which secure the dash-foot to the frame,
the web being in other portions preferably left of a uniform
thickness; and one of the objects of thus making the web thin
is to enable it to be more readily punched or otherwise per-
forated. By means of those dies a recess is formed in either
side of the bottom rail, which recess corresponds with the
tongues $a^2$ of the dies.

The four claims of the patent are as follows: "1. The com-
bination, substantially as set forth, of the two dies having
opposing angularly-joined depressions, $a\ a'$, and a tongue, $a^2$,
in the depression $a'$ of either or both dies. 2. The combina-
tion, substantially as set forth, of the two dies having opposing
angularly-joined depressions, $a\ a'$, and a tongue, $a^2$, in the de-
pression $a^2$ of either or both dies, the depressions $a'$ deepening
toward their junctions with the depressions $a$. 3. The combi-
nation, substantially as before set forth, of the dies having
opposing angularly-joined depressions, $a\ a'$, and a tongue, $a^2$,
in either or both of the said depressions, the face of said tongue
or tongues being inclined. 4. The combination, substantially
as before set forth, of the dies having opposing angularly-
joined depressions, $a\ a'$, and a tongue, $a^2$, in either or both of
the said depressions, the depressions $a'$ deepening toward their
junctions with the depressions $a$, and the face of the tongue or
tongues being inclined."

The whole of this alleged invention is based upon the idea,
old and well known, that a metallic die, whether of a cameo
or intaglio form, will, when impressed upon a piece of heated
or yielding metal, leave the latter of the converse form of the
die, and that, when two dies are brought together over a piece
of heated or yielding metal, the latter will take the shape of
the space existing between the contours of the two dies. It
is an inevitable consequence of the use of two dies in such a
way, on two pieces of metal of proper size, heated to a weld-
ing heat, that swaging or welding will take place by the
impact of the dies; that, when the dies have tongues and de-
pressions in them, the metal acted on by such tongues and de-

pressions will take the shape, in form and thickness, of the space left between the tongues or the depressions; and that a greater or less thickness of metal will be the result as the face of the tongues is more or less inclined. All this was old and common knowledge, and the whole of the operation resulting from such features is nothing but the well-known action of two dies so shaped as to give the desired conformation to the article acted upon by them.

If it was desired to preserve a channel in the bottom rail of the dash-frame, when the bottom rail was made of channelled iron, it was obvious, and not a matter of invention, that the die must be provided with a tongue to fit into the channel, to prevent the filling up of the channel by the forcing into it of metal by the action of the dies in welding the two pieces together. So, too, if it was desirable to make the welded parts thicker, and thus stronger, at the angle formed by the end-bar and the bottom rail, it was obvious that the bottoms of the recesses in the dies must be deepened at such angle. That is all there is of the alleged invention of Peters.

It appears from the testimony that it was not new, at the time of such alleged invention, to use channelled iron in making dash-frames; or new to weld channelled iron to flat or oval bars of iron; or new to use dies for swaging or welding together two pieces of iron. All that remained to be done in the present case, as in other cases, was to adapt the form of the dies to the shape desired in the article to be acted upon by them. Dies which act upon two pieces of metal which are capable of being welded to each other, and which are brought to a welding heat, necessarily will weld them together by the impact and action of the dies. There is no patentable invention in securing such result of welding or swaging, if there be no patentable invention in the construction and use of the dies to produce a given shape in the article acted upon by them.

The decree of the Circuit Court is

*Affirmed.*