## BALLOU v. POTTER et al.

### (Circuit Court, D. Rhode Island. September 24. 1901.)

### No. 2,549.

PATENTS—INVENTION—PROCESS FOR MAKING SAFETY PINS.
  The Ballou patent, No. 380,380, for an improved process of manufacturing safety pins, which in substance consists in the use of a cold-swaging machine to form and temper the pin and catch, is void because what is therein described does not constitute a patentable process, and the description is not such as would enable a person skilled in the art to use the same without extended and original experiment, it appearing that pins cannot be successfully made by the method described, except from a special alloy, and by using specially constructed dies in the swaging machine, neither of which are mentioned in the patent.

In Equity. Suit for infringement of patent. On final hearing.

Warren R. Perce, for complainant.
Charles A. Wilson, for respondents.

BROWN, District Judge. This suit is for infringement of letters patent No. 380,380, dated April 3, 1888, to Barton A. Ballou, for an improvement in the process of manufacturing safety pins. The defense is the invalidity of the patent, infringement being conceded if the patent is valid. The specification states that the invention "relates to that class of pins commonly called 'safety pins,' in which the pin point is protected by the catch receiving it; and it consists of a series of operations, as hereinafter specified, by which the wire blank

is formed with a central broad body and one end of the wire is swaged to form a pin catch, and the other end is reduced, elongated, tempered, and pointed by compressing dies to form a pin tongue, after which said ends are bent so as to engage with each other." Also: "It has been common hitherto to form the tongues of broad-backed safety pins by hammering, but such process has a tendency to make the pin tongue brittle. By cold-swaging the pin tongue, as above described, it is not only shaped and pointed, but receives that hardness and temper which are necessary, without wasting the material, as when the stock is filed, or destroying the fibre of the metal, as when the stock is hammered." The claim is as follows: "The improved process of manufacturing safety pins herein described, consisting in forming the central portion of the wire blank into a bodied portion, a, by a die and plunger, swaging one end of the wire to give it a longitudinal groove, reducing, elongating, tempering, and pointing the opposite end of the wire by cold-swaging by suitable dies, and bending the ends so as to make them engageable with each other, substantially as specified." The patent states also that the end of the blank from which the pin is formed is "reduced and elongated by compression in any suitable machine, for which purpose I use the needle swaging machine described in letters patent of the United States No. 268,874. By this machine the wire end, c, is subjected to the process known as 'cold-swaging,' whereby it is lengthened out and tempered to form the pin tongue." This cold-swaging machine, known as the "Torrington machine," is also used in forming the other end of the blank into a pin catch. The defendant contends that the patent discloses no patentable invention, and no process, but merely familiar mechanical operations, not patentable under a process claim; and relies upon Iron Works v. Medart, 158 U. S. 63, 15 Sup. Ct. 745, 39 L. Ed. 899. To avoid this decision, the complainant contends that the "tempering" of metal is a process, and that the use of the word "tempering" in the claim indicates the ground upon which the patent should be supported. The only "tempering" referred to in the patent is that produced by the action of the cold-swaging machine. It seems apparent that there is no relation between the manner of forming the rest of the blank and the "tempering" effect of the cold-swaging machine. Whether the central portion of the blank is formed by a die and plunger, as specified in the claim, or by rolling, or by the hand hammer, is immaterial. The patent, then, is, in substance, for the use of a cold-swaging machine to form and temper the pin and catch of a safety pin. As the patent concedes that it is old to form the tongues of broad-backed safety pins by hammering, but says that this has a tendency to make the pin tongue brittle, and as condensation and compression of metal by a hammer to some extent affects the temper and elasticity of the pin, it would appear that the improvement effected in the Ballou safety-pin tongue was due simply to the superior manner in which the machine hammer dies of the swaging machine performed the old operation of hammering and condensing the metal, and that the advance pointed out in the patent was due simply to the superior performance by Torrington's patented machine of work that previously had been

performed less perfectly by hand. Upon this view, I am of the opinion that there was no invention in doing what is described in the patent. Peters v. Manufacturing Co., 130 U. S. 629, 9 Sup. Ct. 643, 32 L. Ed. 1057; Kilbourne v. Bingham, 1 C. C. A. 617, 50 Fed. 697; Rynear v. Evans (C. C.) 83 Fed. 696.

It furthermore appears in evidence, however, that for the making of the Ballou safety pin much more is essential than is disclosed by the patent. Thus, the Torrington machine is referred to as a proper machine for cold-swaging; but it appears from the evidence of the complainant that the Torrington machine did not solve the difficulties that arose in making pin tongues; that its dies were unsuitable.; and that much experimenting was necessary, as a result of which it was found that to elongate the wire and harden the metal without injury depended upon getting a proper taper of the dies; and that the patentee found "that the pin must be simultaneously struck its entire length, beyond the taper, and all around, in order to get the requisite stiffness and strength, hardness and temper." It appears also that much experimenting was necessary with alloys before a suitable stock was found which could be made sufficiently elastic and hard by cold-swaging. The complainant concedes that the machine must operate upon a prepared or alloyed stock. He testifies also: "In ordinary jewelry the alloy is copper and silver only, but I found that these alloys did not give a material suitable for tempering and hardening by my process; therefore I used the other metals which I have mentioned [i. e. gold, copper, silver, nickel, tin, and zinc in composition]." It also appears from the testimony of the complainants that the Ballou pins get their peculiar qualities "from the combined metals from which they are made, the dies used in their manufacture, and the action of the swaging machine and dies upon the combined metals, whereby the peculiar qualities of each are developed"; that is to say, dies of a peculiar taper and an alloy of a particular character are essential to the complainant's "process." The patent is silent upon these points. It is obvious, therefore, that the patent does not give such a full disclosure of the way of making safety pins as is required by the patent law. After the expiration of the patent, there must be extended experiment, both with dies and alloys, before one skilled in the art can make the Ballou pin. The complainant's brief attempts to meet the objection that the specification and claim do not contain the word "alloy," or any reference thereto, by saying "that the use of the word 'tempered' in the claim necessarily implies an alloyed stock, a pure metal requiring a mixture therewith of some one or more other metals in order to secure a 'temper.'" I do not think that such an implication exists; but, if we concede it, the mere instruction to use an alloy would be still insufficient, for the complainant has testified that the ordinary alloys, copper and silver, are unsuitable for the "process." It is apparent from the evidence that the desirable features of the Ballou pin are due rather to skill and excellence of manufacture than to any inventive thought which led to a patentable process or product. I am of the opinion that the patent, construed in the light of the testimony as to the prior art, does not disclose a patentable invention;

that what is there described does not constitute a patentable process, and is not such a description as would enable a person skilled in the art to use the same without extended and original experiment. I find the patent invalid. The bill will be dismissed.