SMYTH MFG. CO. v. SHERIDAN et al.

(Circuit Court of Appeals, Second Circuit.  November 7, 1906.  On Rehearing, November 21, 1906.)

No. 145.

1. PATENTS—INVENTION—ADJUSTABILITY OF PARTS.

Merely making the parts of a machine adjustable with respect to each other does not constitute invention, but is within the ordinary ingenuity of a skilled mechanic.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 17.]

2. SAME—NOVELTY—BOOK-SEWING MACHINE.

The Reynolds & Jacobs patent, No. 435,613, for a book-sewing machine for sewing the signatures of books together, claims 3 and 15, which are broad claims, covering a combination of detail parts not specifically described, except that they are adjustable, and the sewing devices generally arranged in groups, if given the broad construction imported by their terms, are void for lack of patentable novelty, in view of the prior  t; the only novel feature being such adjustability.

3. SAME—SUIT FOR INFRINGEMENT—APPEAL.

Patents set up in the answer in a suit for infringement as a part of the prior art, printed and indexed in the record on appeal, and referred to in the briefs, and in relation to which witnesses were examined, all without objection, will not be excluded from consideration by the Appellate Court because they were not formally marked as exhibits by the examiner.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, holding defendants guilty of infringement of claims 3 and 15 of United States letters patent No. 435,613, dated September 2, 1890, to Reynolds and Jacobs for book-sewing machines, and ordering injunction and accounting. The decision of the Circuit Court is found in 144 Fed. 423, and the following excerpt therefrom exhaustively and clearly describes the machine of the patent. "This patent relates to a book-sewing machine by which the separate signatures of which the book is formed are stitched together prior to binding. In the machine in question each signature is placed astride a swinging sheet-holder or bar, the upper edge of which enters the fold of the signature. The sheet-holder is swung forward and down into such a position as will enable the operator to place a signature upon it. The holder is then swung up, bringing the signature into proper position to be operated upon by the sewing devices. These sewing devices are arranged in groups, and the instrumentalities of each group cooperate to form a line of stitches. These lines of stitches are independent of each other. When each group of these sewing devices has formed a stitch in a signature, and secured it to the preceding signature, the sewn signature is pushed back, and another brought into position. The sewing is done by a series of semicircular needles, which pass through perforations in the back of the signatures, which are made by perforators mounted on the sheet-holder bar. The perforators move in guideways in blocks on the bar, and are lifted and retracted when necessary for the performance of the work by suitable mechanism. Loopers are carried by a bar, and employed to take the loops of thread from the needles. These loopers at each operation cast off the loops previously taken from the needles, and take other loops in a manner unnecessary to describe, but which is well known in the art for making the chain stitch. The shafts of the circular needles are mounted in needle blocks adjustable along a stationary bar, the face of which is provided with a row of cavities engaged by screws. Each needle block is provided with a screw, and each block may thereby be adjusted and held in any desired position. The blocks in which the perforators are guided, as well as the perforators, are adjustable along the sheet-holder bar, and may be moved into positions which correspond with the positions given the needles, and these blocks are held in position by screws. The loopers are adjustable on a transverse bar, and the blocks guide not only the perforators but the curved needles. The blocks guide other needles not used in the formation of the independent line of chain stitches, which secure the signatures to each other. These last-mentioned needles are used to introduce tapes across the backs of the books, to give them strength, and assist in securing them to the covers. These needles are many times omitted. The thread is supplied by spools. One spool [for each independent line of stitches] supplies the thread of which the chain stitches are formed, and another spool supplies the thread by which the tapes are secured to the backs of the books. The tapes are supplied from tape reels. The spools are mounted on a spool-holder adjustable transversely of the machine, and this spool-holder is provided with a screw or stud, which passes through a slot in a bar upon which the spool-holder rests. The spool-holder is locked into position by means of a nut. The reels supporting the tapes are mounted on bars in such a manner that they can slide transversely of the machine. When the position of the sewing devices, which consist of the needles, the perforator guiding blocks, the loopers, and the perforators, is shifted, the thread-supplying devices may also be shifted to correspond therewith. This is true of the tape-supplying devices when used."

Paul Synnestevedt and E. R. Newell, for appellants.

J. Q. Rice, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The machine of the patent is a complicated one, comprising many parts, and exhibiting various combinations. The patentee sought to cover whatever fea-

tures they conceived to be novel by 16 separate claims, some of which deal with quite minute details of operative parts. Two claims only (3 and 15) are relied upon, and we are therefore concerned only with the particular combinations which they refer to. Whether invention may or may not lie in the combinations set forth in other claims need not be discussed; it is not charged that any of those other claims are infringed. The specification is especially illuminative as to the main feature of the patent, and as to what the patentee understood to be its distinctive novelty:

"Machines have heretofore been made for sewing books in which the folded sheet or signature is laid upon an arm or bar and presented to the sewing mechanism; but such sheets vary in size according to the size of the book to be produced, and, in addition to this, different characters of books of the same size require different kinds of sewing, and difficulty has heretofore been experienced in introducing the sewing at the desired point in the back of the book. One of the principal features of the present invention relates to grouping the sewing devices and mounting the same upon adjustable supports, so that they can be placed at any desired point along the back of the signature, and the groups of sewing devices can be associated at any distances apart, so that the sewing may be more or less closely together, according to the character of book that is being sewed, and these sewing devices can be placed at the proper distance from the top and bottom of the signature. In carrying out our invention we group together a semicircular needle and the devices for supporting and moving the same, a loop-tightening mechanism, and presser-plate, which come above the signature and sheet-holding mechanism, and we group together the perforator and the hook-pointed needles that act within the fold of the signature, the perforators forming the holes through which the circular needle passes, and the hook-pointed needles drawing down the loops of thread through which the circular needle passes, and these groups of instrumentalities are so supported that they can be moved or adjusted to any desired points, and the one is easily brought into the proper position to the other, and the actuating devices for the respective groups of instrumentalities do not have to be changed. Hence the machine can be adjusted by the party using the same so as to bring the sewing to whatever place or places may be desired upon the folded signature, and we group together the spools and tension devices, so that they can be brought into proper position in relation to the groups of sewing devices as required from time to time."

The specification then proceeds elaborately to set forth, in 13 columns, all the details of the "present invention."

From the above excerpt it is manifest that the principal feature, or one of the principal features, is the making of the parts which do the sewing adjustable, so that upon a single machine books of varying length may be sewed. It is this feature which is characteristic of the two claims declared upon, which read as follows:

"(3) The combination, in a book-sewing machine, of the sheet-holder bar and two or more groups of sewing devices adjustable transversely of the machine, one part of each group of sewing devices being upon the sheet-holder bar and adjustable thereon, and the other portion of the group being above the sheet-holder bar, which holds the signature that is being sewed, and also adjustable upon a stationary transverse bar on the machine, substantially as set forth."

"(15) The combination, in a sewing machine, of sewing mechanism adjustable transversely of the machine, a spool-holder adjustable transversely of the machine, and a reel frame and reel for a tape or cord, also adjustable transversely of the machine, whereby the instrumentalities for perfecting the book-sewing can be thrown in the proper positions in relation to the signatures to be sewed, substantially as set forth."

Referring to claim 3, the complainant's expert says:

"The elements of this claim are expressed in terms which do not, and evidently were not intended to, confine the claim to the particular construction shown and described. It is evident, for instance, that the terms of the claim do not refer to the particular form of sewing devices illustrated in the patent, nor do they refer to the particular agroupment of the sewing devices shown in the drawings and specifically described in the specification."

This conclusion of the expert is manifestly correct, and the fifteenth claim is as broad, if not broader, undertaking to cover any "sewing mechanism," any "spool-holder," and any "reel frame and reel," which are adjustable, so that they can be thrown into the proper positions in relation to the signatures to be sewed.

The specific construction of the group elements in defendants' machine concededly differs from that of the patent, and the charge of infringement cannot be sustained unless these two claims, broadly phrased as they are, can be held valid. The specifications, the language of the claims, the concurring testimony of the experts, the laudations of counsel's brief, all unite in showing that the distinguishing feature of the patented machine is its adjustability. By it, as counsel asserts:

"A practical way was devised of constructing a book-sewing machine so that the position of the lines of stitches could be varied according to the character of the books to be sewn, thus enabling the placing of the independent lines of stitches across the backs of the books where they would be most effective and exercise the greatest holding power."

Apparently the prior art showed some adjustable needles (Hall's patent, 105,329), but only in a machine which did not make independent rows of stitches. But the citation of the Hall patent is unimportant. Mere adjustability of parts does not constitute invention. Peters v. Hanson, 129 U. S. 541, 9 Sup. Ct. 393, 32 L. Ed. 742; Doig v. Morgan, 122 Fed. 460, 59 C. C. A. 616; Sipp Electric & Machine Co. v. Atwood-Morrison Co. (C. C. A.) 142 Fed. 149. If we had the particular combination of complainant's groups of sewing devices, spool-holders, and reels with "one part of each group of sewing devices," as its expert says, "arranged on a particular part of the machine, to wit, the sheet-holder bar, * * * and another part of the group upon another part of the machine, to wit, the stationary transverse bar," but all rigidly affixed to their respective mountings, it would require no more than the ordinary ingenuity of the skilled mechanic to cut slots and arrange washers, set screws, etc., so as to give to each part of each group capacity for lateral adjustment.

In order to escape this result, two other features are referred to as giving validity to the combination of the third and fifteenth claims. It is pointed out that the separate groups of sewing devices are so arranged as to enable each group to form an independent line of stitches across the back. We concur with the finding of the Circuit Court that:

"Books sewn in this manner are very strong—much stronger than when sewn in the ordinary manner. When so sewn, if one line of stitches breaks, the holding of the signatures by the other lines is not disturbed, and the book does not fall to pieces. When signatures are held together by a thread or threads common to all the lines of stitches [as was Hall's device, cited supra], the breaking of the thread in one line will permit one and perhaps more of

the signatures to fall from the book, and as a result the book will soon come apart. The securing of the signatures by independent lines of stitches is essential to the highest success in the sewing of books by machinery."

But independent lines of stitches were not new. In the patent to Smyth, No. 250,991, there are four semicircular needles, which act in pairs. Each pair so operates threads supplied from two spools as to make a line of stitching across the back, and the line of stitching so made by one pair is wholly independent of the line made by the other pair, whose supply of thread comes from two wholly independent spools. There are unsatisfactory features about the stitching of each individual line the needles entering alternate sheets only, and the loops at the back being held in place by a cord passing through and locking them; but entire independence between the stitches made by each separate pair of needles is manifest, the breaking of any thread sewed in by the one pair having no effect upon the sewing done by the other pair with independent threads. Whatever invention there may be in the combination of detail parts which produces a better locked and better secured individual line of stitches is not imported into either of these claims; their only assertion of improvement being adjustability, and the general arrangement of the sewing devices in groups, one part of each group being upon the sheet-holder and the other part above the sheet-holder. Such a general arrangement is shown in Reynolds, No. 366,793, or, to speak more accurately, is suggested by that patent, since it shows only the perforators on the sheet-holder bar, but these are to co-operate with the needles located above that bar. Much is sought to be made of the "perforators arranged in groups," so as to punch the holes from within, thus leaving the paper along the crease line inside of the signature smooth and in good condition to receive the needles, while they also automatically center the signature, so that the openings for the needles are formed exactly on the crease line. But such a location of the perforators is shown in Reynolds (No. 366,793), only without any capacity for transverse adjustment.

If these two claims are to be given the construction which their phraseology necessarily imports and which complainant contends for, they cannot be held valid in view of the prior art, because their only novel feature is adjustability. Whether the patentees did or did not invent a novel and useful device, for which, within the limits of their invention, they are entitled to patent protection, we do not undertake to decide. We are concerned only with the two claims here counted on. What has taken place since the entry of the decree in the Circuit Court, however, is somewhat suggestive as to the scope of the patent. It is stated that the defendants, in the face of the injunction now under review, have so altered their machines as to deprive them of their "adjustability," leaving the action in sewing and the form of stitch made and the mechanism itself otherwise exactly the same; but apparently no step has been taken to extend the injunction to these nonadjustable machines. These facts do not appear in the record, but they are asserted in the appellants' brief, and not disputed in the appellee's. If the statements are correct, it would seem that defendant's machine is not covered by any other of the 16 claims; but

that circumstance is immaterial here. The claims now in controversy, if construed broadly enough to cover defendant's machine, must be held invalid for lack of patentable novelty.

The decree is reversed, with costs, and cause remanded, with instructions to decree in accordance with this opinion.

## On Rehearing.

PER CURIAM. This petition may be divided into three parts. The first, which deals with the question of adjustability, is substantially but a restatement of the argument presented on the hearing of the appeal. The second is devoted to a dissertation in support of the proposition that it would require inventive genius to transform the machine of patent 250,991 into the machine of the patent in suit. This court did not hold the converse of that proposition, as is apparent from a reading of the opinion. Finally, it is suggested that prior art patent No. 250,991 was "not offered in evidence." It is set up in the answer, and is printed and indexed in the record. It is referred to in large type in appellants' brief, which appellee's counsel admit was before them when they prepared their own (see page 5 thereof); it was twice referred to on the oral argument, and one member of the court asked a question about it, but no objection to its consideration was presented. Moreover, the very counsel who signs this petition for rehearing, on cross-examination of a witness (record, page 394) said: "X-Q. 137. I call your attention to patent No. 250,991, * * * and ask you whether this patent does not represent the construction of the six machines," etc.? and followed this question with four others, referring to the same patent. In view of these circumstances, the objection made at this late day, that the examiner did not formally mark it in evidence as an exhibit, is not one calculated to commend itself to an appellate court.

A similar objection is raised to prior patent 366,793, also referred to in the opinion. Except for the questions on cross-examination, the facts with regard to this are the same. It is printed in the record, and, as the court's annotations show, counsel on both sides read from it and discussed it, with no suggestion from any one that it was not properly there.

The petition is denied.