### STEVENS v. RODGERS BOILER & BURNER CO.

(Circuit Court of Appeals, Sixth Circuit. April 25, 1911.)

No. 2,049.

1. PATENTS (§ 328*)—INVENTION—REFUSE BURNING FURNACE.

The Stevens patent, No. 843,971, for a refuse burner to consume the waste product of sawmills, having a water jacket formed by an outer and inner cylindrical iron shell, discloses but a single novel feature over those of the prior art, which is in employing braces between the two

---

shells having a slot at the inner end through which the connecting bolt passes to secure them to a radial circumferential flange on the inner shell, which gives a slidable connection and allows for the expansion and contraction of the inner shell, and such feature does not involve invention, especially in view of the use of similar connections in the construction of boilers, which is an analogous art.

2. PATENTS (§ 311*)—SUITS FOR INFRINGEMENT—EVIDENCE.

Evidence of anticipation by prior devices and of prior use is admissible in a patent suit to show the prior state of the art, although no notice of it was given in the answer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 542; Dec. Dig. § 311.*]

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Suit in equity by Clifton D. Stevens against the Rodgers Boiler & Burner Company. Decree for defendant, and complainant appeals. Affirmed.

Brown & Hopkins (Francis A. Hopkins, of counsel), for appellant. Stephen H. Clink, for appellee.

Before SEVERENS, Circuit Judge, and COCHRAN and SATER, District Judges.

SATER, District Judge. [1] The complainant charges that the defendant infringes the first and second claims of his patent, issued February 12, 1907, on his application of November 24, 1905, for improvements in refuse burners to consume the waste products of sawmills. The claims are as follows:

"1. An incinerating furnace comprising inner and outer spaced walls, a radially projecting circumferential flange secured to the periphery of the inner wall and provided with a plurality of apertures, braces secured to the inner face of the outer wall, said braces being provided with a slot in the free end thereof, each of said slots being adapted to register with an aperture in the flange, and a bolt passing through the registering apertures.

"2. An incinerating furnace comprising inner and outer spaced walls, a radially projecting circumferential flange secured to the periphery of one wall, and braces secured to the inner face of the other wall, the free ends of said braces being slidably connected with the flange."

According to the terms of the patent, the complainant's primary object was to construct an improved furnace comprising a water jacket into which water is fed in such a manner as not to be sprayed directly against its walls. His further or secondary objects were to provide an improved manner of spacing and firmly bracing the walls of the water jacket and the construction of an improved apparatus of the character named which will be simple and strong in construction, cheap to manufacture, and efficient in operation. His burner, like others of the water space type, has an outer and an inner cylindrical iron shell with an annular space between them to contain water to protect the inner shell from burning and loss of rigidity. The braces employed are about one-half inch in thickness, and two and a quarter or more inches in width, the outer ends of which are upturned at an angle, and are bolted or riveted to the outer cylinder. Near the inner or

---

free end of each brace is an elongated slot or hole, which, in the burners thus far constructed, is fifteen-sixteenths of an inch in length and thirteen-sixteenths of an inch in width. Three-quarter inch bolts of the kind in commercial use are driven through apertures thirteen-sixteenths of an inch in diameter in radially projecting circumferential flanges surrounding the inner shell at appropriate points to strengthen it, and thence through the elongated slots of the braces. The shells, which are composed of comparatively thin boiler plate, the sectional sheets of which are prepared at the shop and are segments of a circle, are by the above-mentioned method of securing the ends of the braces spaced and firmly held, excepting that the slidable connection given by the slotted braces permits a play in all of a half inch, which is the amount of expansion in a burner 30 feet in diameter. To that extent such connection cares for expansion due to heat caused by the burning refuse within the inner shell, for the inward pressure of the water column, whose height is frequently from 50 to 60 feet, and for the contraction of the cylinders caused by cold. The circular hole, thirteen-sixteenths of an inch in diameter, used in all braces, prior to 1904, to receive the three-quarter inch bolt, permitted a slight slidable connection, but it was supplanted, in 1904, by complainant's adoption of an elongated slot. The outward expansive force is greatest when the burner is first fired, because the inner shell, being in immediate contact with the fire, heats more quickly than the water and the outer shell. In practice it was found that the effect of these outward and inward pressing forces, especially if an inadequate number of braces was used, was to cause the inner shell to bulge and even to collapse, and both shells to leak, on account of the pulling of rivets or bolts through the cylinders. In assembling the sections of the shells difficulty was also encountered in making the cylinders true circles, and in causing the equal sized apertures or holes in the flanges and braces so to align or register that the bolt which passes through both could be easily and quickly driven. This interfered with speed and economy in construction, and a method of remedying this difficulty was therefore desirable and is covered by the patent, which provides for a slotted or slidable connection on the free end of the braces.

In October, 1904, the defendant engaged in the business of manufacturing boilers and refuse burners, and, in ignorance of any claim on complainant's part of an exclusive right to use an elongated hole in refuse burners, or of his intending to apply or of his having applied for a patent, erected a number of burners whose braces were like his, excepting that the hole in them was not elongated, but was fifteen-sixteenths of an inch in diameter. For this reason the charge of infringement is made, to which are interposed the defenses of noninfringement, anticipation, prior use, and lack of invention.

The first refuse burner of the water space type was constructed at Bay City, Mich., some time prior to 1895. The firm of which complainant was a member also began, in that year, the erection of such burners and used angle iron bands to reinforce the upper portion of the inner shell. Flat iron braces, whose ends were upturned at an angle, were employed to space and stay the shells. Six years later his firm extended the use of the angle iron bands to the lower portion of

the burner, and bolted the inner end of the braces to the horizontally-projecting flange. A year later the Langford Bros. erected a burner at Eureka, Cal., which differs in the manner of construction from those built under the complainant's patent only in that they used a smaller number of braces and a circular hole thirteen-sixteenths of an inch in diameter instead of an elongated slot.

In view of the contents of the letters patent and the proceedings had in the Patent Office, as disclosed by the file wrapper, the learned trial judge with much reason held that the second claim, whose fourth element is "the free ends of said braces being slidably connected," is no broader than the first. Assuming, without deciding, that, as contended by the complainant, the second claim is broader than the first, it is then sufficiently so to cover a round as well as an elongated opening in the braces.

Its use of a larger hole in the braces than in the flange, the defendant asserts, is to facilitate erection and obviate the difficulty and expense in aligning or registering the two holes. The complainant contends that his purpose in employing a slotted hole is to compensate for the expansion and contraction of the shells. It is manifest, however, that the use of either hole operates not only to speed and cheapen construction, but to care for the expansion and contraction of the cylinders. The complainant in his patent describes with minuteness the means of feeding the water jacket with water, the obvious purpose of which, as regards the inner shell, is to avoid sudden contraction from the spraying of cold water directly against it. He also details the method of feeding the refuse into the furnace, and holds that it is clear that the walls of the furnace are entirely free from the continuous jarring of the hopper and chute in the feeding process. There is no allusion, however, within the folds of his letters patent to the bulging from any cause of the inner shell, or the leaking and collapsing of burners, or the tearing out of rivets or bolts which secure the braces, nor is there any declaration of a purpose to provide means whereby his apparatus will adjust itself to expansion, or contraction, or water pressure, except as it appears inferentially in his specification that in the upper sections of the water jacket the pressure caused by the water and steam is considerably less, and that the radial flange, carried by the periphery of the inner wall, and the adjustable brace-bars may there be dispensed with and double-end brace-bars used instead. This suggestion is also in harmony with cheapness of construction. The only portion of the description of his device which mentions the slot proceeds as follows, omitting the numerical references:

"Spacing, or brace-bars, or ribs, provided with an angular portion (the upturned end), and having a slot in one (the free) end, are secured to the inner face of the outer wall by means of bolts or rivets engaging the angular ends, and in such a position that the slot in each bar or brace will register with one of the apertures in the radial flange. A bolt or rivet passes through the registering apertures and slot and serves as a means whereby the walls may be adjusted and braced in relation to each other."

The "spacing" braces gauge and maintain the intervals between the concentric shells. This accords with his purpose to "provide an improved manner of spacing and firmly bracing the walls of the water

jacket." The means whereby "the walls may be adjusted and braced in relation to each other" is the bolt passing through the flange aperture and the slot. The adjustment referred to relates to the time of the erection of the burner, and not to the time when expansion or contraction is present. Ease in registering and economy in construction are thus obtained by the use of the slotted or elongated hole. Considering the declared objects to be accomplished by the improvement, and the absence in the patent of any allusion to any injurious effect to the concentric shells due to heat or cold, and that there is but a doubtful inferential suggestion of any provision to care for expansion or contraction, it must be held that the purpose of his specified form of braces, of the slotted or elongated opening in them, and the mode of securing their free ends, was to insure ease, economy, and solidity in construction, equal spacing of the shells, and protection against the inward pressure caused by water and steam, rather than to provide for the expansion and contraction of the cylinders.

But conceding that the complainant is entitled to all the uses and advantages which may arise from the slot, whether he conceived the idea of all of them or not (Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267), the fact still remains that the only feature of his device not found in the prior art is the slot or slidable connection of the braces. All else is old. That an enlargement of the hole in the braces by elongation, or by an increase of its diameter, would compensate for expansion and contraction in the shells and secure greater ease and economy in construction through the speedy alignment of such hole with the aperture in the flange, if either or both of these results were desired, was so obvious that the patentee only saw and did what any mechanic skilled in the art of refuse burner construction must have seen and would have done. His application of the slot or slidable connection did not involve patentable invention. Smyth Mfg. Co. v. Sheridan, 149 Fed. 208, 79 C. C. A. 166. Even complainant's expert would not positively say that a mechanic ordinarily skilled in the art of boiler making would not be able, without invention or suggestion, to apply the slidable connection found in boiler construction to that of the refuse burner.

The record does not support the claim that the art of boiler construction is not analogous to that under consideration. The business of manufacturing both refuse burners and boilers has been conducted by the same persons in the same shops. No one has engaged exclusively in the manufacture of refuse burners. For more than 25 years prior to his application for a patent, the complainant had been connected, in one capacity or another, with a plant which manufactured, repaired, and sold not only burners, but marine and other boilers. A portion of the time he had been its part owner, a part of the time its sole proprietor. He had been associated with and had employed in his business skilled mechanics, some of whom were familiar with the construction and repair of locomotive boilers. Witnesses, voluntarily as well as in answer to inquiries, instituted comparisons between the construction of refuse burners and boilers. The file wrapper discloses that during the pendency of complainant's application both his counsel and the examiner treated the water space feature of his device

as boiler construction. Complainant's knowledge of the art of boiler making must be held to have been such that the use of sliding connections, slotted holes, and jaw braces, used in such art, not in precisely the same way, it is true, yet used for the purpose of compensating for the expansion and contraction caused by heat and cold, respectively, would naturally suggest itself to him.

The long-continued use of elongated holes in the art of boiler making is sufficiently established. One witness, a boiler maker of 16 years experience in railroad shops, testified that, when a fire is first started in a locomotive, the crown sheet of the fire box, being directly in contact with the fire, expands more rapidly than the wagon top, which is more distant and protected by the cooling action of the water in the boiler. The expansive force operating on the stay bolts extending between the crown sheet and the wagon top creates a pressure against the latter. The condition described is like that developed by the firing of a refuse burner and by the continued pressure of heat acting on its inner shell. When, however, the engine becomes hot and steam pressure is developed, or when it cools off, a counter force is created which presses towards the crown sheet, just as the water between the two shells and the contraction due to cold produce an inward pressure in refuse burners. To care for the expansion and contraction thus caused in engine boilers, it appears that as early as 1899, according to the evidence given by a foreman boiler maker of a railway company, the two front braces running from the crown sheet to the wagon top were made with an elongated hole in one end. Blue prints showing boilers thus constructed, in 1899, and in use since 1901, and a brace having an elongated hole, taken in the course of repairs from one of such boilers built in the last-named year, were produced at the hearing, identified by witnesses, and offered as exhibits. One of such witnesses further testified that the use of braces of that character, in boiler making, for the purpose of greater ease in bringing the parts together in the process of construction, has been common practice for about 33 years. Another witness, who has been a manufacturer of boilers for 25 years, and who builds tubular, marine, vertical, and water tube boilers, stated that the most usual method of bracing between the crown sheet and the wagon top of boilers is by means of what is termed a jaw brace, pin, or bolt, the holes in the jaw brace being elongated to allow for the expansion and contraction which takes place between the crown sheet and the wagon top, and that this method of construction has been in use ever since he can remember.

In patent No. 770,651, which was issued to Peters and Coleman, September 20, 1904, for an improvement in boiler stay bolts connecting the crown sheet of the fire box with the outside shell of the boiler, the stay bolt shown and described is so constructed and so combined with the crown sheet and boiler shell as to secure a strong connection of those parts, which connection compensates for expansion and contraction and is capable of adjustment. The bolt consists of two parts. The upper part has a two-branched yoke, whose upper end is formed with a screw-threaded stem which is screwed into the boiler shell. In the lower end of the yoke is an opening large enough freely to admit the screw-threaded or upper end of the lower part of the stay bolt.

The lower end of such part of the bolt extends through and is fastened to the crown sheet. Its upper or screw-threaded end passes through and projects above the opening in the lower end of the yoke. A half-round nut, larger than the opening, is screwed on such screw-threaded end so projecting between the branches of the yoke. This nut rests in a seat in the lower end of such yoke and forms a sort of ball and socket joint. The play allowed by the ball and socket like joint facilitates the work of construction, because it obviates the necessity of absolutely accurate alignment between the hole in the boiler sheet and that in the crown sheet, and also adapts the stay bolt to lateral expansion. As the crown sheet expands from heat, the upper end of the lower part of the bolt pushes through the opening in the yoke between its two branches. The boiler shell is thus relieved of the outward strain of expansion due to heat. As the crown sheet contracts, the upper end of the lower part of the bolt may slide through the opening in the yoke towards the fire box, until the half-round nut rests above the opening and on the lower part of the yoke. In both the complainant's and the Peters and Coleman patent, there is a stay or brace with a slidable connection which secures ease and economy in construction and cares for the strains due to expansion and contraction. The two-branched yoke in the Peters and Coleman device is the mechanical equivalent of complainant's elongated slot, and each device attains the same result in substantially the same way as the other.

[2] Objection is made to certain testimony of anticipation and prior use, because notice was not given of it in the answer. It was admissible to show the state of the art, to show what was old, to distinguish what is new, and to aid the court in the construction of the patent. Dunbar v. Myers, 94 U. S. 187, 24 L. Ed. 34; May v. Juneau County, 137 U. S. 408, 11 Sup. Ct. 102, 34 L. Ed. 729.

In view of the conclusion reached, other questions discussed need not be considered.

The decree of the court below dismissing the bill is affirmed.