POSITIVE LOCK WASHER CO. v. RELIANCE MFG. CO. et al.

(District Court, N. D. Ohio, E. D. at Cleveland. June 14, 1913.)

No. 105.

1. PATENTS (§ 17*)—INVENTION—ADJUSTABILITY OF PARTS.
    The mere adjustability of parts does not constitute invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 16, 17; Dec. Dig.
    § 17.*]

2. PATENTS (§ 328*)—INVENTION—DIE FOR MAKING LOCK WASHERS.
    The Barnett patent, No. 529,847, for a die for making lock washers,
    held void for lack of patentable invention.

In Equity. Suit by the Positive Lock Washer Company against the
Reliance Manufacturing Company and Frank C. McLain. On final
hearing. Decree for defendants.

John W. Bostwick, Jr., of Rahway, N. J., Moffett, Guerin & Wick-
ham, of Cleveland, Ohio, and Russell M. Everett, of Newark, N. J., for
complainant.

Fay & Oberlin, of Cleveland, Ohio (Robert M. See, of Cleveland,
Ohio, of counsel), for defendants.

DAY, District Judge. The bill of complaint was filed by the Posi-
tive Lock Washer Company of Newark, N. J., against the Reliance
Manufacturing Company and its secretary and treasurer, Frank C.
McLain, engaged in manufacturing at Massillon, Ohio. The bill prays
for an injunction and accounting for the infringement of United States
letters patent, No. 529,847, for a die for making lock washers, issued
November 27, 1894, to F. D. Barnett, and subsequently assigned to
the complainant company. The patent expired in November, 1911.

It is contended by the defendants that the three claims of the Bar-
nett patent in suit are invalid, that the patented die is nothing more
than an ordinary die ground to conform with the article to be shaped,
and that this patented die was produced by Barnett without any in-
vention whatsoever, but simply by the exercise of ordinary skill, and
the prior patents disclose dies which are substantially like the Barnett
die, though ground to differently shaped metal; furthermore, that the
defendants have acted with fairness in the manufacture and use of
the dies in controversy.

The patented dies are used in the manufacture of lock washers,
which are spiral split rings formed with barbs on the opposite sides of
their two ends, and the washers are used to prevent a nut from turn-
ing on a bolt. In the manufacture of such washers straight bar steel
is set to a rotating mandrel, which coils the bars into spring-like form,
and the coil is then removed from the mandrel and fed lengthwise into
another machine, which cuts successive convolutions from the coil.
These sections so cut from the coil are spiral split rings, and they are
sold on the market as plain lock washers. In order to produce a barbed
lock washer, it is necessary to stamp a plain spiral washer to form barbs
thereon, and the die of the patent in suit may be used for this purpose.

[1] The patented dies which are fixed in a power press comprise

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a stationary lower die and an upper die held in a reciprocating cam of the press. Each of the two dies is cut with two vertically separated inclined faces to conform with the separated end portions of a plain spiral washer; each die has a shoulder at its center, against which terminates the lower face of the lower die and the diagonally opposite upper face in the upper die. The two faces which terminate against the shoulders are cut with grooves in their inner edges, and both the upper and lower dies are cut into two sections at the shoulders which separate their faces. The plain spiral washer is placed on the lower die, and the upper die forced down against it, the metal at the ends of the washer to be stamped into the grooves of the dies to form barbs, but no other portion of the washer will be affected, because aside from the grooves the die faces conform with the plain spiral washer, so that they will not alter its shape. The barbed lock washer which the Barnett die is designed to form is disclosed by the Turnbull patent, No. 440,870, issued November 18, 1890; the complainant company having been formed to manufacture the Turnbull washer. The Turnbull washer differs from the plain spiral washer merely in having barbs at its ends. After a number of experiments with various sorts of machines, some designed to be automatic, Barnett conceived the idea of stamping the barbs on plain washers. The dies of the patent in suit are sectional. This will permit of their being readily ground and of their being subject to adjustability. If the only utility resided in the adjustability, this would not be a patentable feature, as mere adjustability of parts does not constitute invention. Peters v. Hanson, 129 U. S. 541, 9 Sup. Ct. 393, 32 L. Ed. 742; Doig v. Morgan, 122 Fed. 460, 59 C. C. A. 616; Sipp Elec. & Mach. Co. v. Atwood & Morrison Company, 142 Fed. 149, 73 C. C. A. 367; Smyth Mfg. Co. v. Sheridan, 149 Fed. 208, 79 C. C. A. 166; Stevens v. Rodgers Boiler & Burner Co. (6th C. C. A.) 186 Fed. 631, 108 C. C. A. 495.

[2] At the time the patent was granted to Barnett it was not new to construct dies in sections, so that they could be reground more easily than a solid die, and so that they could be adjusted, if desired. This is shown by patent No. 340,886 to Lovell, granted April 27, 1886; patent No. 53,780 to Burdick; also patent No. 53,781 to the same patentee; likewise patent No. 11,263, granted July 11, 1854, to H. W. Hayden; patent No. 273,302, granted March 6, 1883, to J. Palmer; patent No. 490,395, granted January 24, 1893, to W. W. Miner; and patent No. 54,738, granted May 15, 1866, to C. Kane. All of these prior patents illustrate dies designed to shape metal by compression, and the dies are made in sections for the purpose of facilitating the regrinding of the die faces, and these dies are all capable of having their sections adjusted in conformance with the size of the article being shaped.

It is contended in the rebuttal testimony of complainant's expert that a new mode of operation was disclosed by the Barnett patent, because the closed dies confined merely a part of the article and not the whole of it. It appears from the record, however, that in the operation of the Barnett dies about three-quarters of the washer, being barbed, lies on the dies, and that the pitch of the washer is largely determined by

the coil of the spiral spring before the same is cut into the washer sizes. Barnett having before him all of these prior art patents, had simply the problem of grinding sectional dies and shaping them to conform with the finished Turnbull washer. This did not constitute invention. Butler v. Steckel, 137 U. S. 21, 11 Sup. Ct. 25, 34 L. Ed. 582; Smith v. Nichols, 88 U. S. 112, 119, 22 L. Ed. 566; Dunbar v. Myers, 94 U. S. 187, 199, 24 L. Ed. 34; Pomace Holder Co. v. Ferguson, 119 U. S. 335, 338, 7 Sup. Ct. 382, 30 L. Ed. 406; Peters v. Active Mfg. Co., 130 U. S. 626, 628, 629, 9 Sup. Ct. 643, 32 L. Ed. 1057; Watson v. Cincinnati, St. L. & C. R. R. Co., 132 U. S. 161, 167, 10 Sup. Ct. 45, 33 L. Ed. 295.

The Circuit Court of Appeals for this jurisdiction has considered the question of die invention in Strom Mfg. Co. v. Weir Frog Co., 83 Fed. 170, 27 C. C. A. 502. Judge Severens said, in holding the patent invalid:

"And indeed we do not think it can be doubted that, the form of the article to be produced being given, and the material with which it was proposed to make it stated, it would be quite an elementary operation for an experienced metal worker to construct the rail brace of the patent. As the patentee describes no special process, the only process which can be implied is the old one, which the common experience of those employed in such pursuits would suggest.

"But the implication of the exercise of the common skill of the art which must indispensably be carried into the claims in order to save them as sufficiently descriptive is fatal to their validity, for the striking up of the rail brace from a plate of metal, which the patentee claims as his improvement in the art, is thus shown to be nothing else than the old process of making such forms by means of hammers, stamps, dies, and swages, or other tools familiar to operatives skilled in working with them. It belongs to one of the earliest of the arts, and its history reaches back to the myths of antiquity. It is unnecessary for us to decide whether the process is sufficiently described in these claims; for, if it is, it is only by an implication of the pre-existing art, which would demonstrate that nothing was invented."

The patentee had before him a finished Turnbull washer, presenting all of the details of the form of the washer to be manufactured; and, simply, in the exercise of mechanical skill, he produced a sectional die to perform the function of making these washers.

To my mind, the record does not establish the allegations of unfair competition and trade. The patented washers were manufactured by the complainant under a patent which had expired, and the Reliance Manufacturing Company was free to make such washers; and they are now engaged in making the washers by the ordinary process of forging metal by the action of sectional dies.

Complainant's bill of complaint will be dismissed.