BROWN PORTABLE ELEVATOR CO. v. INTERIOR WAREHOUSE CO.

(District Court, D. Oregon.   August 7, 1916.)

No. 6872.

1. PATENTS ☞74—PREVIOUS ART.

A patentee is chargeable with knowledge of all pre-existing devices which go to the establishment of the prior art that may pertain in any degree to his device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 65; Dec. Dig. ☞74.]

2. PATENTS ☞328—VALIDITY—ANTICIPATION.

Patent No. 668,971, for a portable elevator, comprising a frame having an adjustable top portion adapted to be raised and lowered to permit the elevator to pass obstructions, which was equipped with vertical side pieces longitudinally slotted for the reception of bolts for securing the top section at the desired adjustment, *held*, in view of the prior art, not to show invention; the only addition to the art being the raising of the frame by the use of bolts, which is not a patentable invention.

3. PATENTS ☞112(3)—ISSUANCE—PRESUMPTIONS.

A patent regularly and duly issued is evidence of invention and patentability.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 164; Dec. Dig. ☞112(3).]

In Equity.   Suit by the Brown Portable Elevator Company, a corporation, against the Interior Warehouse Company, a corporation.   Bill dismissed.

W. R. Litzenberg, of Portland, Or., for plaintiff.

Robert R. Rankin and Jos. L. Atkins, both of Portland, Or., and D. N. Mackay, of Condon, Or., for defendant.

WOLVERTON, District Judge.   This is a suit to enjoin infringement of a patent, being for a portable warehouse elevator, numbered 668,971, and issued February 26, 1901.   One Eugene Brown is the inventor, and the plaintiff is the present owner, having derived title from Brown.   At the trial plaintiff was required to prove title, but controversy as to ownership was subsequently abandoned.

The infringement is predicated on claims 1 and 4 of the patent. These claims are as follows:

1. A portable elevator comprising a frame having an adjustable top portion adapted to be raised and lowered to permit the elevator to pass obstructions, a sheave or pulley mounted on the top portion of the said frame, a pivoted frame mounted on the said frame and provided with an endless carrier, and a hoisting rope or cable passing over the said sheave or pulley and connected with the pivoted frame, substantially as described.

4. In an apparatus of the class described, the combination of a supporting-frame having a vertically-adjustable top portion adapted to be raised and lowered to permit the elevator to pass obstructions, a pivoted frame having an elevator or carrier, and hoisting mechanism adjustably connecting the pivoted frame with the vertically-adjustable portion of the supporting-frame, substantially as and for the purpose described.

The contrivance, so far as it is necessary for the present inquiry, may be briefly described as a main frame or base, composed of a hori-

zontal portion and a vertical rear portion supported by inclined braces, and provided with an adjustable top adapted to be raised and lowered to enable the elevator to be adjusted to the desired height and permit the same to pass under beams or other elevated obstructions. The base is mounted on casters or wheels and composed of longitudinal side pieces and suitable connecting crosspieces, and is provided at the back with a platform, upon which is mounted an engine for operating the endless carrier of the elevator. The vertical rear portion at its upper part is composed of vertical side pieces longitudinally slotted for the reception of bolts or suitable fastening device for securing the top or section at the desired adjustment, which side pieces are connected by a horizontal piece at the top. On this piece are secured brackets, on which are mounted pulleys or sheaves. Through these pulleys are operated hoisting ropes for hoisting or lowering the outer or upper end of the elevator. The elevator is pivoted on the front end of the main or supporting frame, the vertical position of such frame being at the rear.

The elevator is operated, as stated in the specifications, for elevating commodities in sacks, bales, boxes, barrels, and other packages, by appropriate machinery. The outer or upper end of the elevator is hoisted and lowered as desired by means of a windlass, around which the ropes are wound which pass through the pulleys or sheaves attached to the upper vertical portion of the supporting frame and to the elevator.

In brief, the contrivance consists of a base mounted on casters, with a vertical frame at the rear capable of being adjusted in height at its upper portion by means of slots in the frame or side pieces, and bolts, and provided with pulleys or sheaves attached to a cross-piece at the top, and of an elevator mounted or pivoted on the front end of the base, with its outer or upper end passing back through the vertical portion or frame, which is raised and lowered by means of ropes attached to such outer end and passing through the sheaves and to a windlass attached to the vertical portion.

The defendant has interposed and now insists upon three defenses, namely: Anticipation, lack of invention, and lack of patentable quality in respect to the alleged combination of the claim. Without these, it is practically admitted that there is infringement.

[1] In determining whether there is anticipation and lack of invention, it is essential that we enter the realm of the prior art, and ascertain what the state of the art was at the time of the alleged invention of the patentee. The patentee is chargeable with knowledge of all pre-exising devices which go to the establishment of the prior art that may pertain in any degree as it respects his device. I will not trace the development of the prior art, and only deem it essential for a determination of the cause to refer to a couple of the many patents that have been put into the record for showing the state of the art.

[2] As long ago as February 23, 1886, a patent numbered 336,771 was issued to J. F. Warner and F. Cook for a hay-stacker, which comprised in its elements every element of the plaintiff's device ex-

cept the element of adjustability of the vertical portion thereof. I refer to the top that is adapted to be raised and lowered by means of the slots and bolts. It has the base on casters and wheels, the vertical frame at the rear held in place by a brace, the elevator pivoted to the base in front, and raised and lowered in the rear by means of a rope or cord passing over a pulley attached to the upper part of the vertical portion and running down to a drum operated by a windlass. The functions performed by the device are in all respects the same, barring the adjustability of the rear portion, as above defined as those to be performed by the plaintiff's machine, except that the one is used as a hay-stacker and the other is designed, as alleged, to be used for elevating commodities in sacks, bales, boxes, barrels, and the like, if this constitutes a distinction.

The next device I mention is for a straw-stacker, patented by R. S. Arbogast, March 12, 1889, bearing number 399,312. This device is provided with the means of adjusting the height of the vertical portion; that is to say, the vertical portion is susceptible of being raised and lowered. The manner of adjustment is quite different from that of the plaintiff's device, but the means of adjustment are there. The idea is there. The adjustment is so arranged that when the vertical portion is raised and lowered it operates also, and automatically, to raise and lower the outer end of the elevator in the same way as the alleged infringing device, so that, in reality, the machine may be lowered to pass obstructions, as well as the plaintiff's device, and in somewhat the same way. The only other distinction which concerns the present case between the Arbogast device and this is that the lower end of the elevator is not in reality pivoted directly to the base, but is suspended above it, and may be said to be mounted upon it, considering the manner in which it is maintained with reference thereto. In construction, the real difference in the two machines, that is, so far as material here, is the manner of adjusting the height of the vertical portion. In the plaintiff's machine, this adjustment is accomplished by means of slots and bolts; and in the Arbogast machine it is done automatically as the outer end of the elevator is raised and lowered.

The prior art, it must be conceded, brings invention so very close to plaintiff's device as to leave but the one inquiry, and that is, whether the plaintiff's predecessor exercised inventive faculty or power when he conceived the manner of raising and lowering the height of the vertical portion of his machine by means of slots and bolts, and applied it to a portable warehouse elevator. The art of attaching two pieces of boards or timbers together by means of slots and bolts is manifestly so simple as not to require the exercise of inventive faculty; and to make them so adjustable requires no greater ingenuity. If, however, there be any doubt about this, I need only observe that it has been used so many times in application in mechanics that it has assuredly become a part of the prior art.

But is it invention to attach the device to a portable warehouse elevator, when the prior art shows that the vertical portion of a straw-stacker was adapted to being raised and lowered in height by another

means? It is hardly conceivable that the function of elevating straw or hay in the field is different from that of elevating commodities in sacks, bales, and boxes in a warehouse. The function would surely be the same whether hay or straw in bales was elevated in the field or in a barn or in a warehouse. The coincident that the hay or straw was loose and not baled could make no difference in the art of raising the same to a higher level by an endless chain elevator. The machines might require different adaptability in other respects for handling the different commodities, but the function performed in the process of elevating is the same, and cannot be otherwise. The question is therefore ultimately resolved to whether it required inventive genius to provide plaintiff's device with the specific means devised for raising and lowering the vertical portion, so as to enable the elevator to pass obstructions. The question thus resolved is answered by undoubted authority against the contention of plaintiff. Such an application of the known device of slots and bolts does not arise to the dignity of invention. This is very well illustrated by the case of Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856. The case is so nearly analogous on principle that I will not take time to analyze it. The court there, in speaking through Mr. Justice Brown, has this to say:

"Martin, therefore, discovered no new function; and he created no new situation, except in the limited sense that he first applied an internal gearing to the old Mast-Foos mill, which was practically identical with the Martin patent, except in the use of an internal gearing. He invented no new device; he used it for no new purpose; he applied it to no new machine. All he did was to apply it to a new purpose in a machine where it had not before been used for that purpose. The result may have added to the efficiency and popularity of the earlier device, although to what extent is open to very considerable doubt. In our opinion this transfer does not rise to the dignity of invention. We repeat what we said in Potts v. Creager, 155 U. S. 597, 608 [15 Sup. Ct. 194, 198 (39 L. Ed. 275)]: 'If the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use.' The line between invention and mechanical skill is often an exceedingly difficult one to draw; but in view of the state of the art as heretofore shown, we cannot say that the application of this old device to a use which was only new in the particular machine to which it was applied, was anything more than would have been suggested to an intelligent mechanic, who had before him the patents to which we have called attention. While it is entirely true that the fact that this change had not occurred to any mechanic familiar with windmills is evidence of something more than mechanical skill in the person who did discover it, it is probable that no one of these was fully aware of the state of the art and the prior devices; but, as before stated, in determining the question of invention, we must presume the patentee was fully informed of everything which preceded him, whether such were the actual fact or not."

In further support of this view, see Penn. Railroad v. Locomotive Truck Co., 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; St. Germain v. Brunswick, 135 U. S. 227, 10 Sup. Ct. 822, 34 L. Ed. 122; Ansonia Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 1327; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307; Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699, 37 L.

Ed. 552; Smyth Mfg. Co. v. Sheridan, 149 Fed. 208, 79 C. C. A. 166; Campbell v. Mangle, 194 Fed. 110, 114 C. C. A. 188.

This conclusion results in rendering plaintiff's patent nugatory in so far as it affects defendant's device.

[3] I am aware of the rule that a patent regularly and duly issued is primary evidence of invention and patentability. But, having this rule in mind, it so clearly appears that plaintiff's device, in the light of the prior art, is without the application of inventive faculty that I am irresistibly impelled to the conclusion reached.

The bill of complaint will therefore be dismissed, with costs to the defendant.