# BUTLER *v.* STECKEL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 36. Argued October 24, 1890.—Decided November 3, 1890.

The claims of letters patent No. 274,264, granted to Theodore H. Butler, George W. Earhart, and William M. Crawford, March 20, 1883, for an

" improvement in bretzel-cutters," are invalid, because, in view of the
state of the art, it required no invention to make a single die to cut
dough, on a flat surface, into any particular shape desired, whether the
shape of a bretzel or any other shape.

All that it was necessary to do was to take the bretzel as a pattern and
make a die to correspond in shape with it, the bretzel presenting all the
lines and creases, points and configurations, that were required in the die.

Reasons stated, why the unsuccessful results of prior attempts to make a
machine to cut bretzels do not show the existence of invention in the
claims of the patent.

IN EQUITY to recover for the infringement of letters patent.
Decree dismissing the bill. Complainants appealed. The case
is stated in the opinion.

*Mr. Lysander Hill* (with whom was *Mr. Joseph R. Edson*
on the brief) for appellants.

*Mr. Thomas A. Banning* (with whom was *Mr. Ephraim
Banning* on the brief) for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the
United States for the Northern District of Illinois, March 28,
1883, by Theodore H. Butler, George W. Earhart and William
M. Crawford against George Steckel and Frederick Steckel, to
recover for the infringement of letters patent No. 274,264,
granted to the plaintiffs March 20, 1883, on an application
filed July 6, 1882, for an "improvement in bretzel-cutters."

The specification, claims and drawings of the patent are as
follows: " This invention relates to an improvement in molds
or dies for stamping or cutting out bretzels, having for its
object more especially to cause the product or bretzel to have
the appearance of a hand-made bretzel; and it consists in the
peculiar construction of the mold or die to effect this result,
and other details of construction, substantially as hereinafter
more fully set forth.

" In the accompanying drawings, Fig. 1 is a plan view of
our improved bretzel die or mold. Fig. 2 is a side view, partly

broken away, thereof. Fig. 3 is an enlarged detailed plan view of the die proper. Figs. 4 and 5 are sectional views, taken respectively on the lines $x\,x$ and $y\,y$ of Fig. 3. Fig. 6 is

a view of the product or bretzel of our die. In carrying out our invention we construct the die A after the fashion or configuration of the ordinary bretzel in its general shape — that is, as more clearly shown in Fig. 3. For the purpose of this

specification we will describe the channel or groove constituting the bretzel-die as consisting of a bow or an approximately heart-shaped portion $a$, with its meeting portions $a$ extended so as to cross each other, as at $a^2$. The underlapped portion is further extended, as at $a^3$, said extension crossing or overlapping an extension, $a^4$, of the previously overlapped portion $a^2$. The extensions $a^3$ $a^4$ are projected into the body of the bow $a$. At $a^2$ the creaser of one arm of the groove or channel is extended, as at $a^5$, across its other arm and united to $a^3$, while the creaser $a^3$ is extended on one side, as at $a^6$, across $a^2$. The ends of $a^3$ $a^4$ project into the bow $a$ and terminate in creasers $a^7$. This construction enables the creasing of the product or bretzel at the points above detailed, which imparts to the die-made bretzel the appearance of having been made by hand, or a natural appearance. The die A may be used, as shown, in connection with means to permit its manipulation by hand, which consists of a base B, through which it is adapted to move or operate, the guides or uprights C, the top plate D and the sliding hand-piece E. The uprights or guides C are fixed to the base B and to the plate D. Around the plate D and the guides slides the hand-piece E, cushioned preferably upon helical springs $b$, secured upon the base B. F F are the expelling-studs, secured to the top plate D, and to the base B, below which they extend a short distance, and through coincident apertures distributed through the die A. The die is fixed to the vertically-sliding box or hand-piece E. When the hand-piece E is pressed downward the operation of cutting or stamping out the bretzel from the dough will be performed. Upon the rising of the die, effected automatically by the spring, the studs, whose lower ends, as above stated, project a short distance below the die in its elevated position, will expel the plastic bretzel from the die should it have a tendency to adhere or stick to it. The die can also be readily applied as well to a cylindrical surface as to other surfaces, and used in any number desired. Cams or other suitable devices may be employed in lieu of the hand, for operating the dies. We are aware that the form of the creasers can be changed without departing from the principle of our inven-

tion. The product of the die herein shown is not herein claimed, as it will be made the subject matter of a subsequent application. The cutter herein shown is adapted, by means of the feet or projections $b'$ on the base B, to be moved upon a flat surface and over the dough, and to cut from the same bretzels, which being left upon a flat surface after cutting are not so liable to become misshaped as when cut by rotary cutters as heretofore, and, by the additional creasers $a^5$ $a^5$, and the novel creasers $a^7$ $a^7$, perfect semblance to a hand-made twisted bretzel is produced, while the creaser heretofore used, as $a^6$, does not produce the desired result. Each die has three off-bearing scrap-passages, $a^3$, which pick up the internal scraps and deliver them into the box or hand-piece E. It will be observed that our dies form two kinds of scrap — to wit, connected scraps and internal scraps, the latter being picked up by the dies, and, after passing through the channels $a^3$, are delivered into the box E, or other suitable receiver. We are aware that it is not new to cut lozenges by means of a plate having a series of tubes which cut the lozenges, leaving a connected scrap, the lozenges being carried upward in the tubes; also, that it is old to cut bretzels by means of dies which at once deliver the internal scraps, as they are cut, into one of the cylinders which carry the dies.

"Having thus fully described our invention, we claim and desire to secure by letters patent —

"1. A flat die for cutting bretzels, having the bow $a$, the loops $a'$ $a'$, the intermediate twisted portion, and the ends $a^3$ $a^4$, and provided with the central creaser, $a^6$, the side creasers, $a^5$ $a^5$, and the end creasers, $a^7$ $a^7$, projecting into the bow $a$, substantially as shown and described.

"2. In a bretzel-cutter, the combination of the die A, perforated, as described, for the reception and passage of the scraps and for the expelling-studs F, with said studs, the guide-rods C, the base B, provided with feet or projections $b'$, the springs $b$, perforated plate D, and the hand-piece E, substantially as shown and described.

"3. A flat bretzel-shaped die, having three off-bearing internal scrap passages or channels, and perforations for the

expelling-studs, in combination with the expelling-studs, substantially as shown and described."

The answer of the defendants set up, among other defences, " that bretzels, for the cutting of which from the dough said pretended invention was made, are an old and well-known article, and have been known and in common use for a great many years, and long prior to the said pretended invention; that bretzels are a kind of hard brittle cake, of a particular form, known and associated with that particular form throughout the whole civilized world, and that all that complainants claim to have done in their said invention was the making of a die for cutting them in that form; that the bretzels cut by such die are in no way improved or different from the bretzels heretofore made; that long prior to complainants' said pretended invention dies were in common and public use for cutting dough into various shapes and figures; that such dies were so used for cutting the various letters of the alphabet, different kinds of animals, birds, fishes, hearts, diamonds and any and every kind and variety of attractive or fantastic shapes that confectioners or dealers might fancy or desire; that such dies were made to cut any and every form that might be desired; that, in making such dies, the only change that would be required would be in the form of the cutter, which could be and was varied at pleasure as occasion required; that dies like those above described for cutting various forms were made in every respect like the dies shown, described, and claimed in complainants' patent, for many years before their application for letters patent, with the exception that the cutters were not perhaps of the shape shown and claimed in complainants' patent, but were shaped to cut every variety of form, except, perhaps, a bretzel; that the only difference between such dies and complainants' dies was in the form of the cutter, which form could be and was varied at pleasure; that the making a die to cut bretzels did not require and did not permit any invention, in view of the well-known existence and use of dies for cutting various forms, as above described; that the complainants' patent does not contain or claim anything that, in view of the state of the art, could form the subject of a

valid patent; and that dies like those above described for cutting various forms were, for many years before complainants' application for their patent, made and sold by Jacob Roth, of the firm of Roth, McMahan & Co., at his factory, No. 60 West Washington street, Chicago, Illinois." The answer also alleged " that dies for cutting bretzels like that described and claimed in complainants' patent have been made and publicly used in this country long before complainants' said pretended invention thereof and more than two years before their application for a patent therefor;" and " that, in view of the state of the art at and prior to the alleged invention of the plaintiffs, no invention was required in making the inventions claimed in the patent sued on."

Issue was joined and proofs on both sides were taken, and the case was heard in the Circuit Court by Judge Blodgett, who made a decree dismissing the bill, with costs, from which decree the plaintiffs have appealed to this court. His opinion is reported in 27 Fed. Rep. 219. He says: " The bretzel has heretofore been chiefly made by rolling out a strip of dough, and bending it into nearly a semi-elliptical or heart shape, and crossing the ends, and laying them upon the outer rim of the circle. This form leaves, of course, three interior openings, and in cutting the bretzel from the sheet of dough, as it passes under the cutter, provision must be made for the interior scrap which is cut from the dough, and this is done by having an opening extending through the plate and cutting dies, so that the interior scrap is carried off through the tubes connected with these openings. . . . The proof shows that it is old in the art connected with the preparation of food, to cut crackers, cookies and cakes of various sorts into many shapes, including the shapes of animals, and shows the use, for at least ten years before the application for the patent in question, of dies in bakeries, for cutting cakes in the shape of the capital letter B and the character &, with two or more scrap passages; and with dies of this character in public use, I cannot myself see any patentable novelty in the dies of the patent. They are simply made to cut a piece of dough in the shape of a hand-made bretzel, while the dies offered by the defendants

as anticipating the complainants' dies cut pieces of dough into forms corresponding with the letter B and character &, from which the internal scrap must be removed. These old dies also show expelling studs, by which the cut figure is expelled or pushed out of the die after being cut, performing the same function that is performed by the expelling studs in the patent. It is true, I doubt not, that it required considerable mechanical skill to make a die which would cut a bretzel from dough so as to imitate a hand-made bretzel, because the hand-made bretzel is somewhat clumsily shaped, as the parts are bent, twisted and laid upon each other; and it was undoubtedly a matter requiring some study, effort and experiment to make the shape of the die correspond with the external formation of the bretzel. This, however, seems to me not to involve invention, but mere mechanical skill. The cutter might be compelled to experiment some — that is, cut several dies — but that is not invention. The proof also shows that a large number of persons, before these patentees, had attempted to make a machine which would cut bretzels, and considerable money and time seems to have been expended in efforts to produce such a machine; but the noticeable thing in regard to all these early efforts was the fact that most of those engaged in them were trying to draw out and twist the dough by machinery, rather than to cut or stamp dough from a flat sheet, while others were endeavoring to cut them with dies set in revolving cylinders; and, as soon as the idea of cutting the dough from a flat sheet was conceived, the difficulty seems to have vanished, and success followed the effort, as the only change made was to adapt the old letter dies to the shape of a bretzel." The opinion further said, that it seemed, from the proof, inasmuch as the bretzel is an article of time-honored history in the German countries, connected to some extent with the older religious observances of that people, and intimately with their present social enjoyments, that, in the first efforts at making them by machinery, it was assumed that they must in every respect simulate those made by hand or they would not be acceptable to the public, and must not only simulate them in appearance, but the manipulation of the dough must be sub-

stantially the same as in those made by hand, but when the machine-made bretzels were introduced to the public, and accepted in place of the hand-made article, the problem was solved; and that the merit of these patentees seemed to have been in overcoming a fixed prejudice in favor of the hand-made goods rather than in inventing any radically new process for making the same goods by machinery. We unanimously concur with the Circuit Court in its views.

It is urged by the appellants, that the Circuit Court erred in finding, as a fact, that dies existed which cut cakes in the shape of the capital letter B and the character &, with two or more scrap passages. But we find that the evidence establishes that fact.

In view of the testimony as to the state of the art, it required no invention to make a single die to cut dough, on a flat surface, into any particular shape desired, whether the shape of a bretzel or any other shape. *Smith* v. *Nichols*, 21 Wall. 112, 119; *Dunbar* v. *Myers*, 94 U. S. 187, 199; *Pomace Holder Co.* v. *Ferguson*, 119 U. S. 335, 338, and cases there cited; *Peters* v. *Active Mfg. Co.*, 130 U. S. 626, 628, 629; *Watson* v. *Cincinnati R'y Co.*, 132 U. S. 161, 167.

All that it was necessary to do was to take the bretzel as a pattern and make a die to correspond in shape with it. The bretzel presented all the lines and creases, points and configurations that were required in the die. The question was one, not of invention, but simply of mechanical skill and imitation. The perforations in the die for the passing upward of the scraps, and the expelling studs for pushing off the bretzel from the die, and all the details specified in the second claim of the patent, were old in machines that had been used by bakers for many years. All that was necessary was to take out the old cutter and put in one in the reverse form of a bretzel. The rest of the machine had been used in the same way, in connection with other forms of dies. There is nothing in the suggestion that bretzel dough is different from other doughs, in respect to the action of a die upon it.

In regard to the point taken that the existence of invention in this case is shown by the fact that a large number of per-

sons had before attempted unsuccessfully to make a machine to cut bretzels, and had expended considerable money and time for that purpose, it is to be said, as stated by the Circuit Court, that most of them were engaged in trying to draw out and twist the dough by machinery, rather than to cut out the form of a bretzel by a single die from a flat sheet, or else were endeavoring to cut bretzels with dies set in revolving cylinders. It also appears that those efforts were largely made in attempts to cut out the bretzel by two opposite dies, and that, as soon as the idea occurred of cutting the dough by a single die from a flat sheet, success came at once, by merely changing the shape of the old single die. It also appears, as suggested by the Circuit Court, that there was a prejudice against machine-made bretzels.

The decree of the Circuit Court is

*Affirmed.*