Mahon *et al. v.* McGuire Manuf'g Co. *et al.*

*(Circuit Court, N. D. Illinois. May 2, 1892.)*

PATENTS FOR INVENTIONS—BENDING BLOCK—PATENTABLE INVENTION.

Letters patent No. 337,006, issued March 2, 1885, to David C. Mahon and others, for a "bending block," consisting of a block or former adapted to the bending or shaping of the loop in guide rods for grain-car doors, are void for want of patentable invention.

In Equity.

Bill by David C. Mahon and others against the McGuire Manufacturing Company and William A. McGuire.

*F. W. Parker*, for complainants.

*West & Bond*, for defendants.

BLODGETT, J. This is a bill for an injunction and accounting by reason of the alleged infringement of patent No. 337,006, granted to complainants March 2, 1885, for a "bending block." The patent shows a block or former adapted to the bending or shaping of a portion of the guide rods called for by the patent granted William McGuire and Frank Jaeger, June 3, 1884, and December 1, 1885, for a "grain-car door." The guide rod called for by the McGuire and Jaeger patents is made of round rod iron, about three quarters of an inch to an inch in diameter,

and has a peculiarly shaped loop at the upper end, and the work of forming this loop on an ordinary blacksmith's anvil added quite considerably to the cost of the door. The device covered by this patent is a forming block, over which a part of the iron rod is bent to complete the loop. The peculiarity of this forming block is a J-shaped groove, which receives the iron rod as it has been shaped on the anvil, and the end of the rod is then bent round a nose or projection of the former to give it the required shape, and the end is then bent sideways and flattened by blows from the hammer to adapt it to be fastened to the car with facility. The patent contains four claims, all of which defendants are charged with infringing:

"(1) A bending block or former adapted to receive or hold (at the curvature of the iron) an iron, $e''$, $e'''$, having a curvature, $e'$, the said block also having a part formed approximately like the curvature, $c$, of the said iron, in combination with a pin or lug arranged for contact with the said iron in the angle at the junction of the part, $e'''$, with the flattened portion, $c'$, substantially as and for the purpose specified. (2) A bending block or former having thereon one or more projecting parts, $g$, $g$, formed substantially as shown and described, and one or more projecting parts, $h$, $h$, arranged, substantially as shown, with relation to the part or parts, $g$, $g$, in combination with one or more pins or lugs, F, F, for the purposes set forth. (3) A bending block or former having thereon one or more beveled or tapering projecting parts, $g$, $g$, and one or more beveled or tapering projecting parts, $h$, $h$, in combination with one or more pins or lugs, F, F, the said parts, $h$ and $g$, being tapering or smallest at their outer ends or faces, all arranged substantially as shown and described, with relation to each other, for the purposes set forth. (4) A bending block or former having thereon one or more diagonal or inclined blocks, E, E, and also having upon one or both ends projecting parts, $g$, $g$ and $h$, $h$, both arranged substantially as shown and described, in combination with one or more pins, F, F, for the purposes set forth."

The defenses are: (1) Want of patentable novelty; (2) noninfringement.

In addition to the common knowledge, which might be enough, the proof shows that long before this patent, it was old to give shapes to rods or bars of wood or metal by bending them about a pattern or former; Mr. Barnes, who was called as an expert witness for the defendants, saying:

"By 'bending blocks' I understand is meant what is technically called a 'former,' a former being a block, frame, or mass of wood or metal which has a contour, groove, or surface which either has the same, or approximately the same, general shape, outline, or alignment as the work to be produced. Such formers, and formers in general, have been commonly used since the earliest history of metallurgy. Some of the most complicated formers were used several hundred years since in forming ornamental iron work, a class of work which is at this day performed more commonly in drop presses and dies. Probably the largest use for formers is in bending pipes of copper or iron after filling them with rosin or sand for the connections required in ships and on locomotives; also in the formation of hand railings and ornamental pipe work. Such formers have a contour or shape, either in grooves or sections of grooves, formed by stops either loose or fixed on the formers, the alignment of which corresponds in a general sort of way to the alignment of the work to be produced. In carriage work, in order to obtain duplication

and symmetry, it is absolutely necessary to use such formers—sometimes several of them—to produce one piece. It is not uncommon, however, to produce most complicated forms from common rolled iron by means of a former, having first prepared the metal, if necessary, to more readily assume some particular complex shape. Such formers are not necessarily arranged to bend metals only in one plane, as conical spirals and other forms lying in several planes are often produced in this way. This is often done in preparing pipes for distilleries, and in the manufacture of conical springs."

This testimony is corroborated by that of several practical mechanics in the record, and it may be also said to be a matter of common knowledge that formers have been used from time immemorial to bend various farm implements, like scyth snaths, plow handles, etc. It will be borne in mind that these patentees did not invent the guide rod nor the loop upon it; the only device of their patent being a former, about the end or horn of which the loop of the rod is bent. It seems to me nothing can be more obvious than that only mechanical skill is called into action in making a core or former around which an iron rod is to be bent to bring it to some desired shape. The shoemaker bends his leather around the last to adapt it to the shape of the wearer's foot. The farmer bends a tough, flexible piece of wood around a former shaped like the neck of his ox, to make an oxbow for his yoke. The thills and other parts of vehicles are shaped by bending over formers. In 1 Appl. Mech. Dict. (66th Ed. p. 701, tit. "Bending,") is a description of the mode of forming the links for ship cables by bending them round an oval former. The simple problem is to make a form which shall give the required shape to the rod of iron or wood to be bent around it. It may, in some cases, require a superior order of mechanical skill to make a former which shall hold one portion of the iron rod in place while the other portion is bent round the forming core, as in the case of these guide rods. One part of this loop, it appears, must be formed by the smith with the hammer upon a plain anvil. This being done, the patentee cut a groove in an iron block of such shape as to receive the rod, with the part already made with the hammer, and the portion placed in this groove is held very firmly, while the end to be operated upon is bent round the nose or end of the block which projects beyond this groove. Clearly, only the skill to cut this groove and shape the nose or end of the block to give the required shape to the loop was called for to make this former.

These patentees are intelligent men, well skilled in their art and trade as blacksmiths. They knew, from experience, that it was old to bend iron over a former like a mandrel or the horn of an anvil to give it the desired shape, and the problem presented them was to make a former which would give a final shape to the loop of this guide rod, and thereby cheapen its construction. They knew all they had to do to accomplish this was to make a forming block which would hold the partly formed loop in the shape it had received from the hammer, while the rest of the loop was completed by bending the rest of the rod round the former, and their efforts in that direction resulted in the bending block of the patent. Other persons working at the same problem made devices which the testimony shows would do the work, that is, give the

required shape to the end of the rod, but they were not as good working blocks as that made by these patentees.

It is urged in behalf of complainants that the fact that these other persons failed, or did not succeed as well as these patentees in producing a former for the purpose, shows that the device involved invention. But it seems to me the failure resulted from want of skill. In *Butler* v. *Steckel*, 137 U. S. 21, 11 Sup. Ct. Rep. 25, it was held that it does not require invention to produce a former or die when the former is old; the court saying:

"It is true, I doubt not, that it required considerable mechanical skill to make a die which would cut a bretzel from dough so as to imitate a hand-made bretzel, because the hand-made bretzel is somewhat clumsily shaped, as the parts are bent, twisted, and laid upon each other; and it was undoubtedly a matter requiring some study, effort, and experiment to make the shape of the die correspond to the external formation of the bretzel. This, however, seems to me not to involve invention, but mere mechanical skill. A cutter might be compelled to experiment some,—that is, cut several dies,—but that is not invention."

And the same principle is announced in *Peters* v. *Manufacturing Co.*, 130 U. S. 626, 9 Sup. Ct. Rep. 643; in *Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co.*, 110 U. S. 494, 4 Sup. Ct. Rep. 220; and in *Flörsheim* v. *Schilling*, 137 U. S. 64, 11 Sup. Ct. Rep. 20,—it is held not to involve invention to so change old devices as to adapt them to similar or analogous operations; and in *Burt* v. *Evory*, 133 U. S. 349, 10 Sup. Ct. Rep. 394, it is said: "Neither is it invention to combine old devices into a new article without producing any new mode of operation."

With the view I take as to the question of patentability of this device, I do not deem it necessary to consider the question of infringement, although I may say that as the pins or lugs, F, F, are elements of all the claims of complainants' patent, and as defendants do not use these pins, I doubt if the charge of infringement is sustained, as it is necessary to the working of the complainants' machine that the pins shall be removable; and hence the raised portion of defendants' block around which the part to be flattened is bent does not perform the same office in the defendants' machine that is performed by the pins, F, F, in the complainants' machine; and certainly, if a patent can be sustained at all for such a device as this, it must be for the specific construction. I do not, however, intend to dispose of the case on the question of noninfringement, but, as that question is distinctly made in the pleadings and proof, it is but just, at least, that I shall intimate my views upon it. The bill must be dismissed for want of equity.