## GLADDING–McBEAN CORPORATION v. N. CLARK & SONS.

(Circuit Court of Appeals, Ninth Circuit. November 29, 1926.)

### No. 4904.

1. Patents ⊕⇒328—Patent No. 1,184,254, claims 1, 2, for die for manufacturing roofing tiles, held invalid for want of invention.

McBean patent, No. 1,184,254, claims 1 and 2, for die for manufacturing roofing tiles of crescent shape in cross-section, *held* invalid for want of invention.

2. Patents ⊕⇒82—Patentee cannot include in patent invention embraced in prior one to himself.

Patentee cannot include in patent any invention embraced or disclosed in prior patent to himself.

3. Patents ⊕⇒82—Invention disclosed, but not claimed, in patent, is dedicated to public.

Invention disclosed, but not claimed, in first patent, is deemed dedicated to public.

4. Patents ⊕⇒82—Patent for process and article disclosed in prior patent to same patentee held dedicated to public, and void, in absence of filing of individual application.

Where patent disclosing process and article produced claimed only die for manufacturing article, process and article were dedicated to public, and subsequent patent for process and article was void, in absence of divisional application filed during pendency of original application and before patent thereon was issued.

5. Patents ⊕⇒328—Patent No. 1,289,492, for process for manufacturing tile and for tile, held void.

McBean patent, No. 1,289,492, for process of manufacturing tile and for tile, *held* void.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Suit by the Gladding-McBean Corporation against N. Clark & Sons. Decree for defendant, and plaintiff appeals. Affirmed.

Chas. E. Townsend, of San Francisco, Cal. (Wm. A. Loftus, of San Francisco, Cal., of counsel), for appellant.

John H. Miller and A. W. Boyken, both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is an appeal by the Gladding-McBean Corporation from a decree dismissing a complaint in a suit against Clark & Sons for the alleged infringement of two patents, both of which were issued to McBean. The first, No. 1,-184,254, was applied for on May 17, 1915, and issued May 23, 1916, for a mold or die for manufacturing roofing tiles which are crescent-shape in cross-section. The second, No. 1,289,492, applied for January 8, 1917, and issued December 31, 1918, was for a process of making the tiles shown in the first patent, and also for the tile itself as an article of manufacture produced by the first patent.

[1] Want of invention was the main defense interposed to the first patent, No. 1,184,254, the claims of which are:

"1. A die, including an outer member and an inner member, spaced therefrom, whereby to produce a hollow integral cylindrical tile, said outer member having a true cylindrical inner face and said inner member having an outer face composed of a plurality of segments having the same radius as the radius of the inner face of the outer member and with their centers of curvature eccentric to the inner face of the outer member and having their ends meeting at common points, and means to form lines of weakening at said common points to allow the tile to be separated into sections which perfectly nest.

"2. In the art of tile manufacture, means for forming a hollow integral cylindrical tile, means for shaping the inner face of said tile to form same with a series of segments having the same radius as that of the tile periphery and with their centers of curvature eccentric to the tile periphery, and means for forming lines of weakening, at the respective segment ends to allow the tile to be separated into sections which perfectly nest."

The object was to provide a die to form a number of segments at a single operation, the tiles having such shape, that, when separated along the scored line or grooves, they would nest perfectly, but which may be retained together until baked, in order to prevent them from warping and becoming misshaped after leaving the die. In the machine there are two concentric circular plates or members, an outer and an inner member; the outer member having a true cylindrical inner face, the inner member having an outer face composed of a plurality of three segments. The clay in plastic condition is forced into the space between the two faces, and, as it passes through, knives score the lines of juncture of the individual tiles which form the cluster. This gives a hollow

cylindrical clay structure, consisting of a cluster of three tiles joined together and having weakened lines along the points of juncture. The cluster of three tiles is then baked, and, after drying, the tiles are separated by a blow which produces three tiles in crescent-shape in cross-section.

The question is whether the machine for producing by extrusion such a cluster of three crescent-shape tiles joined together into a cylindrical unit, with weakened lines along the points of juncture, involves invention. The evidence is that it was old to use molds or dies for producing tiles from plastic clay in clusters, by the extrusion of the clay through such dies with scored lines along the points of juncture, and thereafter baking the product and then breaking it into separate tiles by a blow of a hammer. We mention a few prior patents:

Daniels, April 21, 1903, No. 726,144, showed a die for molding curved tiles by the extrusion method in clusters of four, with scored lines along the points of juncture. Daniels' tiles were polygonal in form, instead of crescent-shape, but they could be nested. Earlier patents to Bannon (1900) and Hammill (1885) show dies for making clay products by extrusion in clusters of two, with scored lines at points of juncture. Wight's patent, No. 370,437 (1887), showed a die for manufacturing tiles from plastic clay by extrusion in clusters, with scored lines along the points of juncture, which were baked and separated by a light blow. Freund (1898) showed an S-shape roofing tile. He forced moist clay in a strip through a correspondingly curved die and cut to length. In his specifications he said the tiles so formed nest for shipment, deriving support and protection from each other. His tiles showed a groove tapering off to the end, substantially two crescent-shape tiles integrally joined together.

It goes without saying that to produce an article globular in shape by molding, the die used must be globular. So, also, it is self-evident that to produce a crescent-shape tile, a die must be crescent-shape. We cannot see that McBean did more than to shape the mold in cross-section to correspond to the shape of the tiles. Thus his case is brought within the doctrine of Butler v. Steckel, 137 U. S. 29, 11 S. Ct. 25, 34 L. Ed. 582. The Supreme Court there said that, inasmuch as it was old in the art to use dies for molding dough in other forms different from the form of a pretzel, and inasmuch as all that the patentee did was to change the form of the die to the form of the pretzel by making the shape of the die correspond with the

shape of the pretzel, there was no invention involved. After holding that, in the light of the state of the art it was not invention to make a single die to cut dough on a flat surface in the particular shape desired, Judge Blatchford said: "All that was necessary to do was to take the pretzel as a pattern and make a die to correspond in shape with it. The pretzel presented all the lines and creases, points and configurations, that were in the die. The question was not one of invention, but simply of mechanical skill and imitation." It was also herein proved that the crescent-shape tile was actually in use on the roof of the New Orleans Post Office building several years before McBean applied for his patent. Patents to Sawyer, No. 964,059 (1910), and French patent to Ajas, No. 332,-415 (1903).

[2-4] In the second patent, that for the method and for the article, the patentee stated his purpose to be to enable the tiles to be made economically and in quantities, under such conditions that sagging or warping while the material is in the plastic state is overcome. The drawings in the second and first patents, and the descriptions of the process and products, are very similar. In the first patent, however, although the process and article produced were described, McBean only claimed the die. The result is that the process and the article became dedicated to the public, and the second patent is void, unless he filed a divisional application for the method and the product, while the original application was pending and before patent thereon was issued. The rule is general and well established that a patentee cannot include in a subsequent patent any invention embraced or disclosed in a prior one granted to himself. By his own act he has made it public property. Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 28 L. Ed. 665.

In McClain v. Ortmayer, 141 U. S. 423, 12 S. Ct. 77, 35 L. Ed. 800, the court said: "Nothing is better settled in the law of patents than that the patentee may claim the whole or only part of his invention, and that, if he only describe and claim a part, he is presumed to have abandoned the residue to the public. The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery,' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them." Faris v. Patsy (C. C. A.) 273 F. 907; Rip Van Winkle v. Murphy (C. C. A.) 1 F.(2d) 673.

We think it impossible for McBean to

avoid the effect of these decisions, for the record is that, notwithstanding the fact that the Patent Office examiner advised him that he must file a divisional application for the product claims, he declined to follow the requirement, struck out the claims for the product, which were included in the original application, and permitted the patent to be issued upon the machine only. We cannot regard the second application as a division of the first. The record does not warrant such a construction. What McBean did was to file an independent application after issuance of his first patent.

[5] In the light of the authorities cited, we must hold that both patents are void.

The decree is affirmed.