ANDERSON & WRITER CORPORATION v. HANKY BERET, Inc., et al.

No. 278.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

O. Ellery Edwards, of New York City, for appellants.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon and W. Houston Kenyon, Jr., both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of patent No. 1,725,500 for a tam pressing machine; claims 7, 8, 9, 10, and 11 are in suit. On motion of the appellee, the District Court granted a preliminary injunction and directed that the machinery of the appellants be impounded upon the appellee filing a bond.

The patent relates to the art of making felt hats, tams, or berets out of one-piece felt discs, circular in outline, which are formed under the combined action of heat, pressure, and moisture, and stretching or shrinking into the articles. The inventor says:

"The invention proposes the use of a press having a spring holding disc connected with a foot pedal for assuming various positions, and springs connected with the disc and with a movable die engageable in a stationary cup-shaped die. Use is also made of a circular plate with a radial slot made of flexible material such as spring steel for receiving the tam goods which is spread over one side and the edges then pulled through a central aperture in the movable die. The said movable die may be provided with heating elements and the tam goods must be in a wetted condition when worked upon."

The style of the tam which is made on the machine is known as a beret. The machine consists of a flat heated lower die or supporting table. It is round, with a small upright marginal wall, whose sole function is to guide the operation of the upper elements. This is for convenience in manipulation as well. Upon the lower die is superimposed a hot upper die which is a thick disc of metal with a diameter of about ten inches having a round central opening of about four inches in diameter. The underside is smooth. The upper side is equipped with heating means, a gas pipe extending halfway around, and also has lugs or attachment arms whereby the upper die may be manipulated by the operator by pedal, and, when the beret is being cooked, the upper die may be forced down and held firmly in lowered position to co-operate with the lower die to hot-press damp material placed between them. There is inserted between the upper and lower dies a thin circular disc of metal of the same diameter as the upper die. It is a forming disc. During the operation, the cloth is wrapped around this disc, and all parts of the marginal edge are drawn tightly inward toward the center of the upper face of the forming die; one function of the forming element being to hold the cloth out to the shape of a beret. The entire cloth is first dampened by a water spray, and the forming element with the damp cloth wrapped and folded upon it is then placed upon the lower die or supporting table; the upper die is then lowered. In this position, the marginal edges of the cloth appear in the central opening in the upper die. The edges are pulled by the operator inwardly toward the center and upwardly through the hole,

usually by a draw string. At the same time, the hot upper die is brought down hard by the pedals and held down. Due to the influence of the heat and moisture and rapid drying the cloth readjusts itself and stretches in some places and directions and contracts in other places, and thus settles and conforms around all parts of the forming element. It thus loses its folds and wrinkles and smooths out and acquires the shape as desired. After this cooking process, the pressure between the dies is released and the forming element with the pressed cloth thereon is removed from the machine. The smooth beret is then taken off the forming element, and, after additional steps, as turning inside out, sewing an elastic band around the head opening, and attaching a pigtail and a label, the beret is ready for the market.

Claims 7, 8, 9, 10, and 11 read as follows:

"7. The method of producing tam-o'-shanters or the like from a sheet of material, comprising the steps of folding the outer portions of the material inwardly toward its center and holding the marginal edge of the folded material against contraction, pulling the free inner end of the material inwardly from the marginal edge, and subjecting the folded material to the action of pressure in the presence of heat and moisture.

"8. A machine for making tam-o'-shanters or the like, comprising a lower die having a base and an upstanding flange defining the effective area of the base, an upper die for movement within the flange of the lower die and having an opening extending therethrough and spaced from its outer marginal edge, a separate shaping element adapted for insertion within the flange of the lower die and adapted to have the material of the article folded over the same and serving to hold the marginal edge of the material against contraction, the opening in the upper die affording access to the free inner end of the material whereby it may be pulled inwardly from the marginal edge, means to effect a relative closing movement between the dies, and means to heat one die.

"9. A machine for making tam-o'-shanters or the like, comprising a lower die having a substantially flat face and an upstanding flange at its outer edge, an upper die for movement within the flange of the lower die and having an opening extending therethrough and spaced from its marginal edge, a separate shaping element adapted for insertion within the flange of the lower die and adapted to have the material of the article

folded over the same and serving to hold the marginal edge of the material against contraction, the opening in the upper die affording access to the free inner end of the material whereby it may be pulled inwardly from the marginal edge, means to effect a relative closing movement between the dies, and means to heat one die.

"10. A machine for making tam-o'-shanters or the like, comprising a lower female die having a recess to bodily receive the article being formed, an upper male die to enter the female die and having an opening formed therethrough which is spaced from its marginal edge, a separate shaping element for insertion within the female die and adapted to have the material of the article folded over the same to define the marginal edge of the article, the opening in the male die affording access to the free inner edge of such material for pulling action, means to effect a relative closing movement between the dies and means to heat one die.

"11. In a machine for making tam-o'-shanters or the like, a lower die, an upper die for co-action therewith and having an opening formed therethrough and spaced from its marginal edge, a shaping element to be removably mounted between said dies and adapted to have the material of the article folded about the same, said shaping element having a diameter approximating that of the upper die whereby the outer edge of the shaping element is disposed adjacent to the outer edge of the upper die and remote from the opening of the upper die, the opening in the upper die affording access to the free inner edge of the material for pulling action, means to heat one die, and means to effect a relative closing movement between the dies."

The patent was granted as late as August 20, 1929, on an application filed November 29, 1928. The defenses interposed are anticipation (the principal reliance of which is on the Kiwad patent, issued March 17, 1925) and noninfringement by the appellants' structure.

▮ Kiwad shows a hatmaker's press of a structure known to the art at the time of his invention. On the table of this press is shown a lower die with the hat material. On this material is found a former which is in two parts, one a ring and the other a turret with a flange in the plane of the ring. The upper die is rigidly attached to a cross head or uprights, which are spring-supported and operate by foot treadles in the well-known manner of such machines. Through a pipe, steam is applied to the lower die, and it may

be heated by gas or any other suitable means. The drawings, Fig. 9, show the felt on the lower die and the ring of the former in place; Fig. 10 shows the turret of this former as well as this ring in place, and the goods have been clamped to the periphery over the ring, and the outer edge has been brought inwardly and upwardly and impaled by the pins at the top of the turret; in Fig. 11, the upper die has been lowered so as to stretch and shrink the material between the clamps and the pins and render it smooth and suitable for use in a hat; Fig. 12 shows the finished product of the embodiment of this patent. To make a crown, there is a hole provided in the top plate of the lower die, a corresponding die part for the crown, and a bag of rubber containing water which is compressed by a plunger coming down within the center of the top die. The crown may become unimportant and also the mechanism for forming it. The tam has no crown, and the crown-forming elements may be eliminated by the exercise of the knowledge of one skilled in the art. It does not amount to invention to shape a die so as to produce a given product. A die always has been shaped according to the desired product, and the mere shaping of the die is always regarded as within the skill of the calling. Butler v. Steckel, 137 U. S. 21, 11 S. Ct. 25, 34 L. Ed. 582.

Kiwad's, in spite of being a crown-forming mechanism, might well have been found to be as good for making berets so far as he made the brims in the same way as the patent in suit. He kept out the wrinkles by stretching and not ironing; he bent the fabric around the ring and carried it up to the top of the turret. The upper die then descends and forces the hypothenuse to become a right angle and so of greater length. This stretched the brim and also the base as far as the clamps allowed it to be stretched. The extent of this we need not now consider on this application. There was no ironing of the brim. The expert testimony may satisfy a judge at final hearing that Kiwad does disclose a machine and die suitable for making berets. He uses the three elements, the upper die, the lower die, and the former, and he pulls a felt disc from the periphery of the former to the center of the former and secures it at the center before the upper die is lowered. The difference between the patent in suit and Kiwad is that in the former Writer suggests adjusting the fabric through the center of the upper die, whereas Kiwad adjusts his felt before the upper die is lowered. Kiwad has no flange on his lower die, but he does have four clamps which perform

the function of showing the operator just where to place the ring or former. He also has guides for the operator which carry the cross head so that the upper die rises and lowers in a fixed path, and can have no other movement during the functioning of the uprights. Kiwad has two elements to secure this result which Writer secures with one element. One may well be found to be the equivalent of the other. Sanitary Refrigerator Co. v. Winters (Oct. 14, 1929) 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. ——. At final hearing, it may be shown that this is the same device performing the same offices with no change of principle.

■ Nor do we think that infringement is so clear as to warrant granting a preliminary injunction. The two structures of the appellants are referred to. As we have said, Kiwad used a central portion or turret, while the patent in suit used a former without such a projection—a plane plate. The appellee irons its material over this flat plate between the flat surfaces of the upper and lower dies. This ironing obtains the desired result. The appellants do not rely upon this ironing. They rely on the stretching action between the turret and the periphery of the former so that the material is changed from the hypothenuse condition to the two-leg condition. The goods are pressed so that there is a horizontal line between the base of the turret to the periphery and a vertical line up the turret. In Exhibit U, the pressure which is exerted on the tam material while rising on the former is just an annulus pressure close to the turret, so that is the only place where the upper die comes in contact with the flat surface of the goods. It is the same in Kiwad.

Appellants' might well be found to be a stretching and not an ironing operation at the final hearing, but a cooking of the moist material between the hot surfaces takes place just as well in Exhibit U as in the original structure so that the ultimate product is the same. To be sure, it does iron the lower side of the fabric because the appellant uses a solid forming plate and the patent may be limited to an ironing on both sides of the fabric. It is not clear to us now that the upper die which does not iron at all is within the invention.

In Exhibit BB, the upper die is cut away so as to be a narrow ring, as Kiwad, and clamps are employed which hold the material so firmly that it does not move more than a very small fraction of an inch, and it does not have any appreciable shifting under the former. As to this structure, infringement

is indeed doubtful. Under the circumstances, the grant of a preliminary injunction was unjustified, and it follows that the order which impounded the machinery or apparatus was improvidently granted.

We leave open, however, the defenses of anticipation and noninfringement for the court at final hearing. The order entered is reversed.

Order reversed.