## ELEVATOR SUPPLIES CO., Inc., v. GRAHAM & NORTON CO.

### No. 4251.

Circuit Court of Appeals, Third Circuit.

Oct. 6, 1930.

Samuel E. Darby, Jr., of New York City, for appellant.

Virgil C. Kline and Clifton V. Edwards, both of New York City, for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and SCHOONMAKER, District Judge.

WOOLLEY, Circuit Judge.

The bill charges the defendant with infringing certain claims of Re-issue Patent No. 13,932 to Wylde & Schenck and all claims of Letters Patent No. 1,105,053 issued to the same inventors. The District Court, having found the re-issue patent not infringed and the second patent invalid, dismissed the bill. 33 F.(2d) 146. The plaintiff appealed.

The inventions of the patents in suit relate to safety devices on elevators, particularly on passenger elevators.

The art knew from experience that certain dangers lurk in high speed elevator operations and that elevator passengers develop, consciously or unconsciously, a habit of doing very foolish and very dangerous things. It sought by various devices to reduce the dangers inherent in elevator operations and to protect passengers from themselves. Accordingly devices were invented to prevent

the starting of the car until the door is closed, or nearly closed, of which the invention of the second patent in suit is an example; and devices to prevent an unauthorized reopening or pushing back of the shaftway door on its closing movement and before it is entirely closed, and thus to prevent passengers from "rushing the door" and suffering the consequences of that very positive danger, in which class the device of the first patent falls.

Wylde & Schenck Re-issue Patent No. 13,932, Issued June 15, 1915.

The patent is for a "door controlling device." It provides mechanism for two main purposes; one, to open a shaftway door; the other, to close it and, particularly, to prevent it being reopened or pushed back when it is on its reverse closing movement, and incidentally to lock the door when finally closed. We shall assume that the device involves invention. On this assumption we necessarily must also assume that the invention is a combination, not an aggregation. While this is debatable because the device, by its several parts, performs one function in opening and closing the door and an entirely different and unrelated function in providing against pushing open the door on its reverse or closing movement, it follows necessarily, on our double assumption, that the structure is unitary, having dual functions to meet dual requirements which arise out of one problem.

The device consists of a toggle whose levers are employed as means for opening the door and for closing the door and, to a limited extent, for locking it. One lever of the toggle is mounted on the door at about midway its height and is manually operated by a handle also mounted on the door, which, when operated, breaks the aligned levers of the toggle and permits the door to be shoved back or opened, at the same time compressing a spring in a power chamber. The reverse movement of closing the door is effected by the release of the spring and the straightening out of the toggle levers which when fully straightened fasten and lock the door, for obviously the door cannot open so long as the levers or arms of the toggle remain rigidly straight. The mechanism for these purposes was old. Wylde & Schenck invented nothing new to produce these results. But they added to and connected with this mechanism two members known as wheel 11 and cam 14 placed on the handle at the end opposite that of the handhold. The wheel is grooved and the cam is so positioned in respect to the wheel that on opening the door by breaking the toggle the cam slips by the groove of the

wheel and nothing happens. But if, on the reverse movement, that is, on the movement of the door towards its closed position, an attempt be made to push it back, the cam moves into the groove of the wheel and jams, thus preventing a reopening movement and safeguarding anyone trying to rush the door. Also, when the door is completely closed these elements hold the levers of the toggle immovable in their straightened position. This is the new or second part of the unitary mechanism which when called into play performs a distinct function that has no relation to the function of the toggle in opening and closing the door. This part is simply housed in the toggle and handle mechanism. Yet as the two parts are joined in one organization and together form one instrumentality, we have assumed, against the defendant's contention, that they are closely enough related to be a combination.

When Wylde & Schenck applied for a patent for this invention, the Patent Office rejected claim 4 on Berger, No. 503,782 and called for amendment of claim 3 because of fear of Fisher, No. 525,682. The applicants amended both claims (the two now here in suit) by adding these limitations: door mechanism "comprising a toggle one member of which is attached to the door and the other to a relatively stationary part, and a movable member mounted on the door and adapted to break the toggle and open the door"; and means "comprising two parts freely moved past each other but adapted to engage on a reverse movement of the door from any one of a plurality of points during the latter part of the closing movement of the door" for checking a reverse movement of the door when being closed.

These are limitations imposed by the Patent Office and voluntarily accepted by the applicants. They are not now to be read out of the claims or be given a meaning broader than was then intended. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335; Yates v. Smith (C. C. A.) 271 F. 33. With this statement of the invention and limitations of the claims we turn to the alleged infringing device.

The defendant says it is a plain aggregation of prior art elements. And we think it is. The defendant took the old toggle of the Norton patent, No. 773,413 granted in 1904 for opening and closing a shaftway door. Similar toggles for the same purpose are found in Jenkins, No. 518,408; Harkness, No. 553,807; Payne, No. 839,314 and Voight, No. 1,028,833; ranging from 1894 to

1912. These toggles with their door opening, door closing and door locking functions were, of course, just as free. to the defendant as to Wylde & Schenck.

What next did the defendant do? It found that, while the wheel and cam of the Wylde & Schenck device with their jamming action are, on paper, a rather ingenious device, it has no proved advantages for it has never been used and it has certain suspected disadvantages. At all events, the defendant did not want it and has not used it. For its purpose of arresting or preventing an unauthorized and dangerous opening of a closing door, the defendant found and used as a more practical means the pawl and ratchet of the prior art which, though shown in Berger, No. 503,782; Fisher, No. 525,682; Herdman, No. 557,204 and Tobey, No. 762,455; ranging from 1893 to 1904, the plaintiff says is the equivalent of the invention of the patent in suit.

█ The pawl in the defendant's device is suspended from the bottom of the door and co-acts with a ratchet in the floor. In the opening movement it simply slides over the teeth of the ratchet. In the reverse or closing movement the pawl, on any attempt to push back the door, will catch in the teeth of the ratchet at points predetermined by their position. In the ratchet of each of two of the alleged infringing devices there was one tooth and in the ratchet of the third, three teeth. This, clearly, is not within the terms of the amended claims providing for an arrested movement at "any one of a plurality of points." Nor does it involve mechanism of "parts freely moved past each other." To apply that term to a pawl and ratchet, an ancient instrumentality in many arts, does not import invention. The toggle mechanism and arresting movement mechanism in the defendant's device do not come in contact nor do they have any relation to each other. They are as far apart on the door as they were in the art. They are not co-acting parts as in Wylde & Schenck but are separate and distinct structures, functioning separately and differently. The pawl and ratchet function in the old way however the door is opened and closed and the toggle functions in the old way whether there is an arresting pawl and ratchet on or off the door; whereas in Wylde & Schenck the toggle functions in the old way to open the door and also to close and lock it, but is aided by the new parts to secure it in locked position. The toggle of the patent, with one member mounted on the door, is the carrier of the arresting mechanism. In the defendant's device the arresting parts (without any final locking function) are carried not on the toggle but on the door and the floor. Moreover, the defendant's construction is not one which by engagement of the pawl and ratchet prevents a reverse movement at "any one of a plurality of points." It prevents it at only one or three predetermined points just as a pawl will always prevent movement according to the number and location of teeth in the ratchet. That is its common function. Therefore it is clear that the defendant left out of its device the two functional features on which the Wylde & Schenck claims in suit were allowed and by which they are limited, namely; the manually movable member 9—toggle handle—mounted on the door, (the defendant's manual member being mounted on an arm of the toggle), and the arresting member engaging at "*any* one of a plurality of points," meaning at any point where the cam and wheel will jam, (the defendant's arresting member engaging at only one or three fixed points).

Summarizing the distinguishing characteristics of the two devices we find the plaintiff's device is a combination, the defendant's, a mere aggregation; the plaintiff's, a unitary structure, the defendant's, a two-part structure; and that the elements of the plaintiff's structure co-act and cooperate, while the elements of the defendant's structure act independently one of the other. The claims of the Wylde & Schenck patent in suit are not. infringed.

### Wylde & Schenck Patent No. 1,105,053, Issued July 28, 1914.

This patent is for a "door controlling device" similar in design and function to that of the re-issue patent just discussed and differing from it by the addition of means to allow the car to start before the shaftway door is fully closed and thereby save time without increasing the danger. According to common practice elevators provided with safety attachments intended to prevent the starting of the car before the door is closed have interlocking contacts, closed when the door is closed and open when the door is open, through which the hoisting motor circuit leads. When the door and hoisting circuit are open the car cannot be started, hence the operator must wait until both the door and the hoisting circuit are closed before he can start the car. In the invention of the patent in suit the contacts are so adjusted that they close not when the door is fully closed but shortly before it reaches its final

closed position. In order that the partly closed door may not be "rushed" and opened while the interlock switch is thus closed and the car is moving, the door carries the same wheel 11 and cam 14 for preventing a reverse movement which were employed in the Re-issue Patent No. 13,932. Aside from this arrangement, what the patentees did was to set the usual interlock circuit contacts at a point, determined with regard to safety, where the door is "nearly closed" instead of at its "fully closed" point, permitting the car, on this advance closing of the interlock switch, to start and thereafter leaving the door to ride to its closed position. Whether this involved invention was not decided by the trial court or argued by the plaintiff on appeal in view of the finding by the court that the patent is invalid because the inventors had abandoned the subject matter under the following circumstances:

The original Wylde & Schenck patent No. 1,044,115, which we shall call the first patent, was issued on November 12, 1912. The application for their patent No. 1,105,053, the patent in suit, which we shall call the second patent, was filed on June 20, 1913. There can be no question of the similarity of the subject matter of these two patents as they contain identical illustrations and substantially the same specifications. Nor does the plaintiff deny that the first patent completely discloses all the subject matter of the second. Thus everything now claimed by the second patent could have been claimed by the first patent, and some things were claimed by the second patent which were actually claimed in the application for the first patent and rejected. This applies particularly to claim 5 of that application. This claim, though alluded to by the Examiner as relating to "divisible subject matter," was, contrary to the plaintiff's contention, rejected upon the prior art, the Examiner saying:

"Claim 5 is also rejected on Tobey (762,-455) in connection with Cloos, 925,426, June 15, 1909, it being held that there would be no invention in adapting to a door control as in Tobey a common form of safety electric circuit of which Cloos is a type."

This was an adjudication binding the applicants so long as it stood. It continued to stand, for the applicants cancelled the claim without reservations.

The defendant attacked the validity of the second patent on the ground that all matter disclosed by the specification of the first patent and not claimed, and matter claimed, rejected and cancelled, was abandoned and irrevocably dedicated to the public and therefore could not be retaken by the patentees and made the subject matter of their second patent.

The plaintiff does not deny these facts or their chronology but asserts, nevertheless, the validity of the second patent by force of the statutes, stating, quite correctly, that a division of the first patent was made and an application for a re-issue resulting in Re-issue No. 13,932 was filed less than one year after the division was suggested; that the application for another patent, the one resulting in the second patent in suit—covering, it must be said, the subject matter of the first patent and of its rejected and cancelled claim—was filed within one year of the issue of the first patent and, not regarding the application for the first patent as a publication, that there was no publication two years prior to the application.

It should be noted that while the first patent was divided, resulting in a re-issue (the first patent in suit) the second patent now under discussion does not purport to arise on a division or be a re-issue of another patent. This second patent does not, either in its application or in its issued form, refer to an original. Therefore as to origin and legal effect it stands alone, claiming a patent monopoly not for a re-issue of the unexpired term of an original but for the full seventeen years from its own date of issue.

Coming to the fact and legal effect of abandonment, we are of course familiar with the general rule that on the grant of a patent the patentee presumptively dedicates and abandons to the public everything described therein but not claimed, Mahn v. Harwood, 112 U. S. 354, 5 S. Ct. 174, 28 L. Ed. 665; McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 77, 35 L. Ed. 800; Adams Electric Railway Co. v. Lindell Ry. Co. (C. C. A.) 77 F. 432, 451; Ide v. Trorlicht (C. C. A.) 115 F. 137; Gladding-McBean Corp. v. N. Clark & Sons (C. C. A.) 16 F.(2d) 50, 51; and with the complementary rule that an applicant's unqualified acquiescence in the rejection of a claim evinces an intentional omission, Dobson v. Lees, 137 U. S. 258, 264, 265, 11 S. Ct. 71, 34 L. Ed. 652, and consequently an intentional abandonment, made complete in this case by the applicants' failure to substitute other claims for the rejected matter or to file a divisional application therefor prior to the granting of the patent. We are also familiar with the exception to the general rule, saving a later patent claiming the disclosed but unclaimed matter of the

362

first if the two applications were co-pending, Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259; Gladding-McBean Corp. v. N. Clark & Sons, supra. But the exception did not occur here and therefore did not take the case out of the rule, for the application for the second patent was not co-pending with the application for the first patent. Moreover, the applicants made no reservations nor did they otherwise give notice of an intention subsequently to claim the unclaimed subject matter and the cancelled subject matter of the first patent, James v. Campbell, 104 U. S. 356, 382, 26 L. Ed. 786; Mahn v. Harwood, supra. In the light of these facts and this law, there being no conflict between the statutes and the rule, the statutes must be construed with respect to the rule and when abandonment is proved, the rule will not (at least in the absence of a reservation) permit the recapture of abandoned matter after the original patent has issued. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38, 14 S. Ct. 28, 37 L. Ed. 989; Dobson v. Lees, 137 U. S. 258, 11 S. Ct. 71, 34 L. Ed. 652; Yale Lock Co. v. Berkshire Bank, 135 U. S. 342, 10 S. Ct. 884, 34 L. Ed. 168; Gladding-McBean Corp. v. N. Clark & Sons, supra.

■ We are constrained to hold the second patent in suit invalid. The decree dismissing the bill is affirmed.